INDIAN RIVER MANUFACTURING COMPANY, *Appellant,* v. F. M. WOOTEN, *et al., Appellees.*

1. Where an answer to a bill in chancery under oath is waived, and the answer denies the material allegations of the bill the general rule is that it is incumbent on the complainant to prove those allegations by a preponderance of the evidence; and where the object of the bill is to obtain the reformation of a written lease of land because of an alleged mistake or omission therein, an answer under oath being waived, and the answer of the parties who executed the lease denies that any mistake or omission occurred in the drawing up or execution of the lease, it is incumbent on the complainant to show by clear and satis-

factory evidence that such mistake or omission occurred, and if the complainant fails to make such proof, he is not entitled to relief in a court of equity.

2. In order to obtain the reformation of a written instrument on account of a mistake in drawing it so that it does not express the true agreement of the parties, it is essential to prove that the reform sought is according to the agreement of both parties to the instrument.

3. Under the law of comity the courts of this State will entertain a suit in chancery brought by a foreign corporation where the question presented by the bill is the right of such a corporation to protect its real estate from trespass, of which equity has jurisdiction, inasmuch as such a corporation is not forbidden by our statute law from holding real estate.

4. Where a bill is filed by a foreign corporation to protect its real estate located in this State from trespass, and the answer alleges that the complainant corporation is a fraudulent one organized under the laws of New Jersey and intended to evade the requirements of our own laws that a corporation shall have a cash capital equal to its stock or property taken at a just valuation in payment for stock, such a defense is unavailing in the absence of a statute declaring a different policy, when the evidence does not show that in organizing the corporation a fraud was committed against the laws of New Jersey, or some fraudulant evasion of those laws occurred.

This case was decided by Division B.

Appeal from the Circuit Court for Brevard County.

The facts in the case are stated in the opinion of the court.

*A. H. King* and *A. W. Cockrell,* for appellant;

*Geo. M. Robbins,* for appellees.

HOCKER, J.—This cause was before this court at

the June term, 1904, and our decision is reported in 48. Fla. 271, 37 South. Rep. 731. The decree appealed from was there reversed because of the lack of necessary parties and the cause remained to the lower court for further proceedings. After the remand Frank M.Wooten and others filed an amended cross-bill against W. M. Dallam, Walter S. McNair, Thomas J. Wooten, Benjamin Septimus Brigg and Robert Thomson Heselton, this including the parties who this court held were necessary to the cause. The cross-bill and .exhibits are as follows:

"To the Honorable Minor S. Jones, Judge of the circuit court of the Seventh Judicial Circuit of Florida in and for Brevard county.

*Sitting in Equity.*

Frank M. Wooten; O. C. Hansell and Newton Taylor of Brevard county; and Daniel Bell and J. J. Griffin of Volusia county, Florida, bring this their third amended cross bill against the Indian River Manufacturing Company, a corporation under the laws of the state of New Jersey of Camden, New Jersey, (the same being admited to be a corporation for the purpose of this cross bill only) ; and against Wm. M. Dallam and against Walter S. McNair and Thomas J. Wooten of Maxton, North Carolina; and against Benjamin Septimus Brigg of Burlington House, Keighley, Yorkshire, England, and Robert Thomson Heselton of Brevard, Yorkshire, England, as trustees, and personally, and thereupon your orators complain and say:

1. In November, 1890, William M. Dallam as trustee, etc., borrowed $5,000.00 of the Land and Mortgage Bank of Florida and gave as security a mortgage on the Bernando Segui Grant of some 16, 000 acres in Brevard and Volusia counties (reference being made to the official plats and field notes of the United States survey for its more definite location and description).

The mortgage was foreclosed and the land was bid in by Benj. S. Brigg and Robert T. Heselton as trustees (they represented the mortgage creditor). A suit was then instituted by the said Dallam to set aside said foreclosure proceedings and sale, upon grounds not material to this case, and while this was pending your orator, Frank M. Wooten, offered to purchase a ten year lease of the grant, with the turpentine privilege for $4,000.00 or to pay $6,000 for a ten year's lease with turpentine privilege and the right, to cut and carry away the timber and wood. It was a condition precedent that the said Brigg and Heselton and said Dallam should compose their differences so that he could get a good title. The mortgage debt and expenses amounted to about $6,000, and one H. H. Buckman claimed a lien which required $500 to clear off, so it was arranged between the said Brigg and Heselton, the said Dallam and the said Buckman that Messrs. Brigg and Heselton should take the $6,000 and satisfy Buckman and should make a ten year lease of the grant to Wooten carrying the turpentine privilege and the right to cut and carry away the wood and timber thereon, and that they should then deed the land, subject to this lease of turpentine and timber privileges, to the said Dallam.

2. In the above transaction the several parties were represented by attorneys at law, the said Brigg and Heselton by W. B. Owens, Esq.; the said Dallam by Mr. A. H. King and the said Wooten by Messrs. Barrs and Bryan. On November 24th, 1899, your orator, Frank M. Wooten, carried out his part of the trade by depositing the sum of $6,000 in the Commercial Bank of Jacksonville, to be delivered over to Owens upon his clients, Brigg & Heselton, tendering the said ten years' lease with turpentine and timber privilege and the said Owens contracted in writing to procure such a lease, and in the name of his clients gave your orator written authority

to enter at once on said grant and use the same for turpentine and timber privileges pending the delivery of the lease, which the said Wooten, your orator, did. A copy of the said written authority and contract made when the $6,000 was deposited is attached to and made a part of this cross bill and marked exhibit 'A,' the original to be produced when required.

3. On November 27th, 1899, the lease was prepared and executed to your orator and Walter S. McNair and Thomas J. Wooten, the two latter having subsequently sold out to your orator, but by a mistake of the party who drew it, the right to ·cut and carry away the wood and timber on the grant was not inserted, and this mistake was not detected when the lease was signed, nor did your orator learn of the omission until very recently. At the same time that the lease was executed, the deed to Dallam was made conveying to him the grant, subject to the lease, so that by the omission in the lease, the wood and timber which your orator Wooten had paid for was conveyed by mistake to the said William M. Dallam, who was not a purchaser without notice for a present valuable consideration, but who had taken the land in settlement of a pre-existing claim and also with actual notice that the timber upon it had been sold to and paid for by your orator Wooten, and that it was this sale of the timber which furnished the money to pay up the mortgage debt and procure ·the settlement whereby he was to get the land free of the timber, so that your orators say that while the legal title to the timber was conveyed by mistake to the said Dallam instead of to said Wooten, the said Dallam took said legal title in trust and for the use and benefit of the said Wooten who had paid for the same and was the equitable owner thereof. (The lease was made to your orator and two others whom your orator subsequently bought out.)

4. Upon paying the $6.000. purchase money and

getting the contract and permission to enter, shown as Ex. 'A,' your orator, Frank M. Wooten, proceeded immediately to the land and entered thereon and commenced its development as a turpentine farm, at the same time pursuing a wood business and supplying factories at Titusville with fuel. A turpentine still and store were erected on the land and houses for the laborers, and the premises were occupied by your orator, Frank M. Wooten and his servants and employes continuously from November 25th, 1899, and have been so occupied to the present, your orator's open and notorious possession being notice to all the world of his rights in the property.

5. On the 9th day of December, 1901, while your orator, Frank M. Wooten, was in actual occupation and possession of said grant and pursuing openly his business of turpentining the timber and cutting and selling wood therefrom, the defendant, the Indian River Manufacturing Company, took a deed to said premises from the said William M. Dallam for an expressed consideration of $1.00 and other considerations not mentioned but which your orators believe and allege consisted of the bulk of the stock of the defendant company, less what had been conceded to the promotors thereof for promotion. Said defendant company was not *bona fide* purchaser for a valuble consideration and without notice of your orator's rights for the corporation was organized to hold the title of this property which it paid for in its stock, which had no value, and the said Dallam was one of the agents of and so closely connected with said corporation that it was and is charged in law with notice of what Dallam knew of the sale of the timber: but above and beyond this, your orator was in actual possession of the property so that said defendant corporation was charged in law with notice of such facts as to orator's rights as it could have learned by inquiry

of your orator, Frank M. Wooten, so that your orators say that the said defendant, the Indian River Manufacturing Company, took said land subject to the same trust, to-wit: to hold the timber for the use and benefit of your orator, Frank M. Wooten, who had bought and paid for the same, as was impressed upon the holding of Dallam.

6. But now, may it please your honor, the said defendant, forgetful of its duty and obligation in the premises, and falsely pretending to the ownership of said wood and timber, divorced from the trust to hold the same for the use and benefit of your orators, has filed its petition in this honorable court, alleging its ownership of said timber and praying for an injunction perpetually restraining the said Frank M. Wooten and these other plaintiffs, all of whom claim through the said Wooten, from cutting and taking away the wood and timber upon said grant. And the said defendant has also instituted a suit for trespass upon the common law side of this court against your orators, whereby it seeks to recover from your orators damages for the wood and timber already removed from said grant. Your orators charge that under the circumstances aforesaid they are entitled to have the lease executed by the said Brigg and Heselton, and which is owned by your orator, Frank M. Wooten, reformed so as to show the intention of the parties, by inserting therein the omitted clause granting the right to cut and carry away the wood and timber on said grant and to have said lease so reformed declared to be of full force and effect as against the defendant in this cross bill, so that said lease can be used in evidence as a defense to said common law action for trespass.

Wherefore your orators have brought this, their amended cross bill, that your honor may fully settle the

matter at issue, and because they have no other adequate remedy, and pray—

(1)    That the turpentine lease executed by Messers. Brigg and Heselton be reformed by inserting therein a clause granting the right to cut and carry away the wood and timber upon said Segui Grant.

(2)    That the said lease so reformed be decreed to be of full force and effect as against the defendant.

(3)    That the action of trespass brought by the defendant be stayed pending the trial of the issues raised in this cross bill.

(4)    That the original bill be dismissed with costs. And that your orators may have such other and further relief in the premises as may be agreeable to equity and good conscience.

May it please your honor to grant unto your orators the writ on injunction temporarily staying proceedings in an action of trespass instituted in this court by the defendant against your orators, pending the trial of the issues raised in this cross bill.

May it further please your honor to grant unto your orator's the state's writ of subpœna out of chancery directed as required by law. and commanding the defendant, the Indian River Manufacturing Company, Wm. M. Dallam, Walter S. McNair, Thomas J Wooten, Benjamin Septimus Brigg and Robert Thomson Heselton, the two latter personally and as trustees, to be and appear before your honor on a day certain, therein to be fixed, at the court house of Brevard county, to answer this bill (but an answer under oath is hereby expressly waived) and to do further and receive what the court shall have considered in this behalf and your orators as in duty bound will ever pray.

GEO. M. ROBBINS,
Solicitor for Cross-Complainants.

EXHIBIT 'A.'

"Nov. 24, 1899.

Mr. F. M. Wooten,
            City.

Dear Sir:—You are hereby given permission to enter at once upon the Bernado Segui grant in Brevard county, Florida, and use the same for turpentine and timber privileges under the terms of an agreement made between you, the Commercial Bank and W. B. Owen.

Brigg and Heselton, by W. B. Owen, atty.

This agreement made between F. M. Wooten, of the first part, W. B. Owen of the second part, and the Commercial Bank of the third part,

WITNESSETH:—That the said parties have mutually contracted and agreed as follows:

1.  That said Wooten has deposited with said bank six thousand dollars to be paid over to said Owen upon the delivery to said bank for said Wooten within a reasonable time of a good and sufficient lease for the term of ten years of the Bernado Segui grant of about 16,000 acres of land in Brevard county, Florida, with right to turpentine the same and to cut and carry away the wood and timber thereon, the said lease to be first approved by Barrs & Bryan, attorneys for said Wooten, and executed by persons authorized to execute such a lease, it being understood that the various parties in interest are to be so united in the lease that said Wooten and his heirs and assigns shall be secure in the possession of said lands during said term.

2.  That said Owen has contracted and agreed to deposit with the said bank within a reasonable time a lease of said lands such as is hereinbefore mentioned.

3.  That said Owen hereby gives, grants and conveys to said Wooten the right to immediately enter into possession of said lands and to proceed to turpentine the

same and to cut and carry away the said wood and timber, and to so continue pending the delivery of the lease hereinbefore provided for.

4. That said bank agrees to hold said sum of $6,-000.00 in escrow to be delivered to said Owen upon the delivery to said bank for said Wooten of the lease hereinbefore provided for.

5. That upon the failure of said Owen within a reasonable time to so deposit said lease, said Wooten shall have the right at his option to allow further time therefor or to demand and receive from said bank the return of said $6,000.00 and to give up possession of said lands.

Executed in triplicate, this 24th day of November, A. D. 1899. Signed, sealed and delivered in presence of

J. M. Barrs.        F. M. Wooten        (Seal)
O. Wittchen.        W. B. Owen          (Seal)
                    Commercial Bank
                        By Wm. Rawlin-
                        son, Cashier.     (Seal)"

W. M. Dallam answered the amended cross-bill denying in substance all its material allegations in so far as there was any mistake in drawing the lease to F. M. Wooten, T. J. Wooten and Walter McNair from Brigg and Heselton, dated November 27th, 1899, and in so far as he had agreed or consented to the terms of the contract dated 24th of November, 1899, made between F. M. Wooten, W. B. Owen and the Commercial Bank, and denied he had any knowledge or information of the same.

Walter McNair and Thomas J. Wooten filed an answer to the amended cross-bill admitting its averments.

Benjamin Septimus Brigg and Robert T. Heselton on the 7th of February, 1905, filed the following answer to the amended cross-bill.

"In the Circuit Court, Brevard
County, Florida. In Chancery.
Frank M. Wooten et al.
Complainants,
v.
William M. Dallam, et al.
Defendants.

Benjamin Septimus Briggs and Robert T. Heselton, defendants in said cross-bill, not waiving but insisting upon the errors and insufficiency of said cross-bill, so far as the same seeks relief against these defendants—for their answer personally and as trustees to said cross-bill, answering say:

Answering paragraph one of said bill, these defendants admit that in November, A. D. 1890, the said William M. Dallam, as trustee, borrowed the sum of five thousand dollars from the Land Mortgage Bank of Florida Limited of London, England, a corporation, and as security for the payment of the sum so borrowed a mortgage was duly executed by the said Dallam, on the lands known as the Bernando Segui Grant, described in said cross-bill; that said mortgage was duly acknowledged and recorded; that, thereafter, the suit in chancery was prosecuted by said mortgagee, resulting in a foreclosure and sale of said premises; that at said foreclosure sale said lands were purchased by these defendants; and that, thereafter, the said Dallam filed his bill to set aside said foreclosure sale; and that, pending said last suit, negotiations for a lease of said lands were instituted by the parties signing said agreement which resulted in an agreement signed on the 24th day of November, 1899, in triplicate, by the said F. M. Wooten, and by one, W. E. Owen and by a corporation, The Commercial Bank, the last named signing said agreement by its cashier, W. M. Rawlinson—a copy of which said agreement is set forth in Exhibit 'A' to said cross-bill, commencing with,

'This agreement made between F. M. Wooten, of the first part, W. B. Owen of the second part, and the Commercial Bank of the third part witnesseth:' 'That said parties have mutually contracted and agreed as follows:'

And these defendants say, at the time said agreement was so signed, that the said W. B. Owen and the said Commercial Bank had no proprietary or other interest in said lands, and were severally incapable of executing a binding contract whether by lease or sale of said lands or any interest whatever therein and were equally and alike incapable of and had no authority whatever of conducting or concluding any negotiations looking to such sale or lease; and that the absence of such proprietary or other interest and of such authority was at the time well known to said F. M. Wooten; nor did the said Wooten make any offer to these defendants to lease said lands, as set up in said cross-bill.

These defendants admit, that there was a controversy in a suit pending between the said Dallam and these defendants, as the purchaser of said lands at said foreclosure sale, as to the title of said lands; and further, that it was well known and understood, when said agreement was so signed in triplicate, by the parties thereto that no effective proper lease of said lands to said F. M. Wooten, for any purpose could be consummated, unless the said Dallam and these defendants should concur in the execution of such lease; they further admit that one Buckman claimed a lien on said lands growing out of professional services, as his attorney and counsel, rendered said Dallam in respect of said lands. But these respondents affirm it is wholly untrue that any arrangement whatever was made between these defendants, the said Dallam and the said Buckman, that these respondents should take the $6,000.00, therein referred to, or any other sum, and satisfy the said Buckman, and should make a ten year lease of said grant to said F.

M. Wooten carrying the turpentine privilege and the right to cut and carry away the wood and timber thereon, and these defendants should deed said land, subject to this lease of turpentine and timber privileges, to the said Dallam, as alleged in said cross-bill.

On the contrary, these respondents say that they made no such arrangement, nor any arrangement of any kind preliminary to the lease that was in fact executed by them; nor did they authorize any one by writing or otherwise to make the arrangement so alleged to have been made in said paragraph, or any arrangement of any kind whatever looking to the execution of the lease that was executed or to any lease to be executed. These defendants admit that the said mortgage debt and the expenses incident to said foreclosure amounted to $6,000.00, and more; but they do not know and have no information upon which a belief can be predicated as to the amount of the lien claimed by said Buckman, nor whether such claim of lien had any basis in fact.

2. Answering paragraph two of said cross-bill, these defendants say it is wholly untrue that these defendants were represented by W. B. Owen, Esq., in the making of the alleged agreement set up in said paragraph of said cross-bill; it is wholly untrue, that the said Owen represented these defendants in the signing of the agreement so signed November 24th, 1894, by the said F. M. Wooten, the said W. B. Owen and the said Commercial Bank. On the contrary, it was well known and understood that the said Owen and the said bank had no authority to execute the lease therein provided for; and on the failure of the said Owen, within a reasonable time, to procure from the parties, who had the power to execute a lease of said premises, a lease properly executed, and to deliver it to said bank in which the said $6,000.00 was deposited, it was expressly stipulated therein, that 'said Wooten shall have the right at

his option to allow further time therefor or to demand and receive from said bank the return of the said $6,000.00 and to give up possession of said lands.'

It further appears, on the face of said agreement so signed, and the fact is, that said Owen, as attorney or otherwise, did not undertake to represent or bind these defendants to the execution of a lease of any kind; that, on the contrary, the said Owen undertook and did bind himself personally and no one else by the stipulations contained in said agreement.

It is not true that said Wooten in the signing of said agreement was represented by Barrs & Bryan. On the contrary, the money was deposited, and the said agreement signed, by the said Wooten in his own proper person and by and for himself.

It is true that the said Owen in fact signed the writing, so purporting to give authority to said Wooten at once and to enter upon said lands, 'Briggs & Heselton by W. B. Owen, attorney.' But it is also stipulated, in said agreement so signed November 24, 1899, that upon the failure of Owen to procure proper authority for the entry into possession, so had under said agreement, that the said Wooten bound himself to surrender the said possession, so temporarily and so tentatively obtained. These defendants admit, on information and belief, that the copy of the said alleged 'written authority,' and the contract, severally annexed to said cross-bill, as Exhibit 'A' are severally correct copies of the originals.

3.   Answering paragraph three of said cross-bill, these defendants say: They admit that on the 27th day of November, 1899, by their duly authorized attorney in fact, William Moore Angas, they executed and delivered a lease of said premises, to Walter S. McNair, Thomas J. Wooten and Frank M. Wooten; and they further aver that the same was by said lessees filed for record on the 2th day of January, 1900, and was thereupon duly

recorded in the clerk's office, Brevard county, Florida. Said lease, as these respondents are informed, advised and believed, and upon such information and belief aver the fact to be, was prepared by Barrs and Bryan, attorneys at law who were then and there acting as the attorneys of said lessees and it was executed just as and not otherwise than just as said lease was so prepared for execution by said Barrs and Bryan.

But these defendants say it is not true as alleged in said bill that, by a mistake of the party who drew it, the right to cut and carry away the wood and timber on the grant was not inserted therein. On the contrary, no provision was inserted therein for the cutting and carrying away the wood and timber on the grant, because no such provision was agreed to by the parties thereto. At the time said lease was executed, these defendants executed to said Dallam a deed in fee to said grant, subject to the lease that was then and there executed and just as it was then and there executed. And these defendants aver that the said deed and the said lease and the payment of said $6,000.00, the purchase price of said lease, constituted, and were intended to constitute, one and the same transaction. These defendants further aver that the parties to the transaction so consummated were in no wise bound by said agreement of November 24, 1899; nor was said agreement in any wise referred to in the deed and lease as consummated. The parties to said agreement and the parties to the consummated lease and sale in fee of said premises were wholly different, save and except the said F. M. Wooten was one of the parties to said agreement as well as one of the parties to said lease. Under the said agreement, the only enforceable right the said F. M. Wooten had at the time of the execution of said lease and deed, if the said lease as executed was not satisfactory, was to surrender the possession of said lands so taken under the said purported

authority in writing signed by said Owen, and to demand from said bank the money so tentatively deposited with it. And so it is these defendants say at the time said lease and deed were executed, the questions as to the nature and extent of that lease and the price to be paid therefor were open questions to be then and there determined by the parties of said lease and deed, as the only persons authorized and competent to determine them, wholly unaffected by the agreement so signed November 24, 1899. And these defendants are informed, advised and believe and upon such information and belief aver the fact to be, the nature and extent of the lease and the purchase price paid therefor were in fact determined wholly apart from said agreement of November 24, 1899, and that said lease just as it was executed, and the said deed in fee just as it was executed, correctly represent the agreement actually entered into by the parties as to said lease and deed in fee.

4. Answering paragraph four of said cross-bill these defendants say it is wholly untrue, that the said sum of $6,000.00, was paid by said F. M. Wooten, as purchase money for getting the contract, and permission to enter on said grant. On the contrary said sum of $6,000.00 when said agreement of November 24, was signed, was not paid to any one or for any purpose. It was deposited as, and remained the money of said Wooten, just as it was stipulated in said agreement, and not otherwise during the life of said agreement.

5. Answering paragraph five, these defendants say that they have no knowledge or information as to the use and occupation of said premises therein set up.

And having fully answered all the allegations of the

said cross-bill it is necessary for them to answer, pray. to be hence discharged with their costs in this behalf expended.

> OWEN & SMITH,
> Counsel for Benjamin Septimus Brigg
> and Robt. Thomas Heselton, personally
> and as Trustees."

The amended cross-bill waived answers under oath.

Replications were filed to all the answers to the amended cross-bill on the 9th of February, 1905, and it was agreed that the previous answer of the Indian River Manufacturing Company to the cross-bill and the replication thereto be considered as applying to the amended cross bill, and the cause made by the original bill, the amended cross bill and the several pleadings thereto was submitted for final hearing upon the evidence heretofore filed in the case made by the bill and cross-bill so far as the same is pertinent thereto. Some additional testimony was submitted on final hearing. In this condition the case was submitted on final hearing and the judge below made the following decree:

> "In Circuit Court of the Seventh
> Judicial Circuit of Florida in and
> for Brevard County.
>
> In Chancery, A. D. 1907.

Indian River Manufacturing Company
a corporation under the laws of the
State of New Jersey,

vs.                                    Original Bill.

Frank M. Wooten, O. C. Hansell, Daniel
Bell, O. J. Griffin, and Newton Taylor.

*Final Decree.*

Frank M. Wooten, O. C. Hansell, and
    Newton Taylor; Daniel Bell, J. J.
    Griffin,

                    vs.                                    Cross-Bill.

Indian River Manufacturing Company,
    Walter S. McNair, Thos. J. Wooten,
    Benjamin Septimus Brigg, Robert
    Thomson Heselton.

The testimony offered by the Indian River Manufac-
turing Company at the final hearing and admitted upon
the condition that the defendant Frank M. Wooten might
give his testimony in explanation thereof, and the deposi-
tion of said Frank M. Wooten having been considered in
connection with said additional testimony of the com-
plainant; and the plaintiff's objections to the interroga-
tories propounded in said deposition having been duly
considered, and said objections being hereby overruled,
and . . . . . . . . . . .

This cause having come on for final hearing upon the
original bill, answer and replication, and upon the cross-
bill and answers, and replications, and upon the proofs
taken and having been argued by counsel for the res-
pective parties and submitted, and the court having con-
sidered the same, it is ordered, adjudged and decreed:

(1)    That the original bill be and the same is hereby
dismissed. And the court being satisfied by the evidence
and finding as matter of fact that by a mutual mistake
of the parties thereto the right to cut and carry away the
wood and timber upon the Segui Grant was omitted from
the lease of November 27th, 1899, between Benjamin
Septimus Brigg and Robert Thomson Heselton by Wil-
liam Moore Angas, their attorney in fact and Walter S.
McNair, Thomas J. Wooten and Frank M. Wooten and
that William M. Dallam had actual knowledge of said

mistake and omission at the time he accepted his deed
to the said Segui grant from said Brigg and Heselt n
and that said Dallam's connection with the complainant
was of such a character as to charge it with such knowl-
edge as said Dallam possessed at the time it accepted
its deed to said Seguit grant from the said Dallam, it is
considered and adjudged that in the cross-suit the
equities are with the complainants therein and that they
ought to have the relief in the cross-bill prayed.

Whereupon it is ordered, adjudged· and decreed that
the lease dated November 27th, 1899, between Benjamin
Septimus Brigg and Robert Thomson Heselton and Wal-
ter S. McNair, Thomas J. Wooten and Frank M. Wooten
and which is recorded in Book 'L' of Mortgages at page
154 of Brevard county records be and the same is hereby
reformed as follows:   After the words 'turpentine pur-
poses' and before the commencement of the description
of the land by metes and bounds on the first page of the
lease, by inserting the words 'together with the right to
cut and carry away the wood and timber thereon.'   And
following the description and after the words 'to have
and to hold, box, work, and otherwise use said timber
for turpentine purposes, by inserting the words 'and to
cut and carry away the wood and timber.'   And after
the words in the next line 'and it is hereby expressly
covenanted and agreed that the said parties of the second
part may commence boxing, working or otherwise using
the said timber for turpentine purposes,' by inserting the
words 'and to cut and carry away the wood and timber.'
And after the words 'and it is further covenanted and
agreed that the said parties of the second part, their heirs
and assigns shall have the free and unrestricted right to
enter upon, occupy and use the said land for the purpose
of boxing, working and otherwise using the timber
thereon for turpentine purposes,' by inserting the words
'and of cutting and carrying away the wood and timber.''

And after the words 'the said granted and leased timber with the right to box, work and otherwise use the same for turpentine purposes' by inserting the words 'and cut and carry away the wood and timber.'

And it appearing from the evidence that the original lease was destroyed by fire which swept the city of Jacksonville some two years ago, it is ordered that the clerk of the circuit court for Brevard county, Florida, insert the above corrections in red ink on the record of said lease in his office and note on the margin of said record the date of said correction and a reference to this decree as his authority to make them. And it is ordered that said lease as reformed hereby, be of full force and effect as to said corrections, against the Indian River Manufacturing Company, a corporation, its successors and assigns, as if said corrections had originally appeared therein and in the record thereof. It is further ordered that the costs of these proceedings be taxed against the Indian River Manufacturing Company.

Done and ordered at Chambers at Titusville, Florida, this 2nd day of March, A. D. 1907.

MINOR S. JONES,<br>
<em>Judge Seventh Circuit.</em>"

From this decree the Indian River Manufacturing Company appealed to this court.

The errors assigned are, first, that the court erred in dismissing the original bill, and second, that the court erred in sustaining the cross-bill of defendants and granting relief thereon.

We will first take up the second assignment. It will be observed that the Indian River Manufacturing Company, W. M. Dallam and Brigg and Heselton trustees, in their several answers to the cross-bill as amended denied many of the material allegations thereof, and especially that any mistake was made or omission occurred in making the lease to F. M. Wooten, Walter S. McNair

VOL. 55, JANUARY TERM, 1908.     765

Indian River Mf'g. Co. v. Wooten.—Opinion of. Court.

and Thomas J. Wooten, which was executed by Messrs.
Brigg and Heselton on the 27th day of November, 1899.
The denial of the answer in these particulars in direct
response to the allegations of the cross-bill are specific
and categorical, and furthermore they set out in detail
facts which if true sustain these denials.    Replications
were filed to these answers which were not under oath,
and under the rule as laid down by this court in Lykes v.
Beauchamp, 49 Fla. 333, 38 South. Rep. 603, all the
material matters in the amended cross-bill not admitted
in the answers were put in issue and it devolved on the
complainant in the amended cross-bill  to  prove  the
material allegations thereof by at least a preponderance
of the evidence.    Great stress is laid in the brief of the
appellees upon the fact that the evidence shows W. M.
Dallam, the grantor of the Indian River Manufacturing
Company was thoroughly cognizant of the terms of the
agreement between F. M. Wooten and W. B. Owen,
dated  the 24th of November, 1899, and knew that
Wooten would not take a lease of the land unless the
right to cut and remove the timber was included therein.
There is some testimony tending to show that Dallam
knew Wooten wanted the right to cut and remove the
timber, but on the other hand he denies all knowledge of
the contents of the said agreement of November 24th,
1899, and denies that he ever at any time consented or
agreed that a lease should be made to F. M. Wooten
giving him the right to cut and remove the timber, and
there is testimony sustaining his contention.    But when
we come to the answer of Brigg and Heselton, who appear
to have been the trustees' or liquidators of the company
who made the original loan of money to Dallam on the
property in dispute, there is no evidence in this record
which can be fairly said to meet their denial that a mis-
take or omission was made in drawing up the lease to
Wooten *et al.*, dated 27th of November, 1899.    It was

encumbent on the complainant in the cross-bill to overcome this denial by satisfactory evidence. After the filing of their answer and the replication thereto, no testimony whatever was taken by the complainant in the cross-bill to meet the issue thus presented to him. He seems to rely entirely on the testimony of Mr. W. B. Owen taken in the case three or more years before Brigg and Heselton were made parties to this suit. In this testimony Mr. Owen says generally that he had authority to execute the agreement with Wooten dated November 24th, 1899, but does not state how he received such authority, or from whom. We are advised by the record that after giving this testimony he signed the answer of Brigg and Heselton to the amended cross-bill as one of their counsel, and in this answer they specifically deny he had from them any such authority; and they were the owners of the land, having bought it at the foreclosure sale. The fact is that a careful reading of the agreement of November 24th, 1899, shows that Mr. Owen did not therein purport to have any authority to make a binding contract with Wooten. He had acted as attorney in foreclosing the mortgage, and possibly regarded himself in some sense as the attorney of the purchasers; but it is perfectly plain that William Moore Angas was the attorney in fact and representative of Brigg and Heselton, and not Mr. Owen. The lease of November 27th, 1899, which the cross-bill seeks to reform was not drawn by Mr. Owen, but seems to have been drawn by an attorney who represented F. M. Wooten. No attempt to reform his lease was ever made by Wooten, so far as the record shows, until after the original bill was filed in this case by the appellant praying that he be enjoined from cutting and removing the timber from the land in question.

In the case of L. Horne *et al.* v. The J. C. Turner Cypress Lumber Company decided at this term, this court has reiterated the law of this state with reference

to the reformation of deeds or other written instruments. It seems to be established in a number of decisions that while equity will reform a written instrument when by a mistake it does not contain the true agreement of the parties, yet it will only do so when the mistake is plain, and the proof full and satisfactory. "The writing should be deemed to be the sole expositor of the intent of the parties until the contrary is established beyond reasonable controversy, and in such cases the burden is upon the complainants to establish the facts relied on for reformation by clear and satisfactory evidence." It is further held that "to reform an instrument for a mistake in writing, it must be shown that the reform sought is according to the agreement of both parties at the time the instrument was written and the mistake made. When an instrument is written as one party understands it, and not as the other party understands it there is no ground for reform. A reformation cannot make a new instrument which the parties never agreed to make." Applying these principles to the testimony and evidence in the case we think that the complainants in the amended cross-bill have signally failed to show that Brigg and Heselton ever did agree to give to the said complainants a lease to the lands in controversy, with the *right to cut and carry away* the wood and timber on said lands. The lease of November 27th, 1899, contains no such provision, and the answer of Brigg and Heselton asserts that lease to be the only one they ever agreed to make. Under the authorities cited the issue thus presented is not satisfactorily met by the complainants in the cross-bill. It follows therefore that the decree for a reformation of said lease by inserting those words was unauthorized and is erroneous. It is true that Brigg and Heselton did not appeal from this decree, but the error is one which directly affects the rights of their grantee Dallam, and of his grantee the appellant in this case.

We come now to consider the merits of the original bill in this case. It is contended by the appellees that the complainant therein, The Indian River Manufacturing Company, is a fraudulent corporation, organized under the laws of New Jersey, and intended to evade the requirements of our own laws that a corporation shall have a cash capital equal to its stock, or property taken at a just valuation in payment for stock, and therefore it does not come under the rule of comity between state courts that a corporation organized under the laws of a state may transact business beyond the limits of the state which created it; that it is not entitled to sue in this state and is prohibited by the public policy of the state from buying and selling lands in the state.

The general doctrine in the United States is that by the law of comity the courts of a state will entertain a suit brought by a foreign corporation. 3 Cook on Corporations (5th ed.) § 757; and also that foreign corporations created in one of them may acquire, hold and transfer land in another. 2 Cook on Corporations (5th ed.) § 695. We know of no statute in this state, nor of any public policy which denies to foreign corporations these rights and privileges. We have examined the evidence offered in this connection and so far as we can judge the complainant corporation seems to have been organized in accordance with the laws of New Jersey, and there is nothing to show that in organizing there was any fraud committed, or any evasion of the laws of New Jersey. There is no question in this case of the liability of the individual stockholders to creditors. The sole question involved is the right of the corporation to protect real estate from trespass, which has been conveyed to it by deed. Our legislature does not prohibit such a suit, and we do not feel justified in saying that the complainant corporation has no right to sue. Dema-

rest v. Flack, 128 N. Y. 205, 28 N. E. Rep. 645, S. C. 13 L. R. A. 851

The equity of the bill is not questioned by demurrer, and the evidence shows that the trespasses of which it complains were committed by the defendants named in the bill. It seems to us that the complainants in the original bill are entitled to the relief therein prayed for.

The decree appealed from is reversed with directions that the cross-bill be dismissed and the cause remanded for further proceedings. The costs in the cause are to be paid by the appellees.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and WHITFIELD, J., concur in the opinion.

COCKRELL, J., disqualified.