CONTINENTAL CASUALTY COMPANY, a corporation, *Appellant*, v. CITY OF OCALA, a Municipal Corporation, *Appellee.*

Division B.

Opinion filed April 21, 1930.

852

*Robert H. Anderson, John B. Sutton* and *G. L. Reeves,* for Appellant;

*Hampton & Green,* for Appellee.

BUFORD, J.—Baker & Foulks, Inc., was a construction contractor. The City of Ocala contracted with Baker & Foulks, Inc., for the construction of certain streets in the City of Ocala. Baker & Foulks, Inc., agreed in its contract with the city to post a surety bond in an amount equal to 100 per cent of the contract within fifteen days after notice of acceptance of bid. A proposed form of bond was submitted with the proposal for bids and was accepted by the contractor as constituting a part of the obligation which it assumed in submitting its bid. The condition in that proposed bond was as follows:

"Now therefore, if the said principal shall and truly comply with and perform each and all of the terms, covenants and conditions of the same on his part to be kept and performed according to the tenor thereof, and he will perform the work embraced therein upon the terms proposed and in the time prescribed and in accordance with the plans, profiles, and specifications furnished thereof, and shall fully and

promptly pay all claims for supplies, labor and materials used in the construction thereof; any direct or indirect damages that shall be suffered or claimed during the construction of said improvements by reason of the construction thereof, and until the same is accepted, and if the above principal, his successors, heirs, executors, administrators, or assigns shall deliver the same to the .......... free from all claims of adjoining or neighboring properties for damages or trespass, and free from all claims of damage of whatever nature by the said.............., its officers, agents, or employees, then this obligation to be null and void, otherwise to remain in full force and virtue in law, and said surety hereby stipulates and agrees that no change, extension, alternation, deduction or addition, in or to the details of the plans covered by said contract shall in any wise affect the obligations of said surety on its bond.''

The contractor did not give the bond as specified. In fact, the contractor did not execute any bond at all. The amount of the contract was approximately $133,000.00 It appears from the argument of counsel that the actual amount of the contract was about $128,000.00. That is, we gather, that it was estimated that the contract would run to $133,000.00, while as a matter of fact, it ran only to $128,000.00.

The bond, instead of being for 100 per cent of the contract was for $64,000.00, which was not more than fifty per cent of the contract. The condition of the bond was entirely different from that proposed by the City and agreed to be posted by the contractor. The material difference being that there was no obligation contained in the bond posted binding the surety company to ''promptly pay all claims for supplies, labor and materials used in the con-

struction thereof''; but, on the contrary, it did contain the following provisions:

"That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named; and that the obligation of the surety is, and shall be construed strictly as, one of suretyship only, shall be executed by the principal before delivery, and shall not, nor shall any interest therein or right of action thereon, be assigned without the prior consent, in writing, of the Surety.''

The bond was executed by the surety company but was not executed by the principal, the contractor.

After the work was completed some claims were filed against the City for material furnished under the contract and, thereupon, the City filed suit to reform the bond in such manner as to make the surety liable for the unpaid claims of the materialmen.

There was a demurrer to the bill of complaint which was overruled.

From the order overruling the demurrer appeal was taken.

The bill of complaint fails to show that there was ever any agreement upon the part of the surety to execute a bond containing the provisions which appear in the blank bond attached to the specifications and the bond which was executed by the surety company shows upon its face that it was not the purpose or intention of the surety company to execute a bond guaranteeing that the contractor would pay all claims for labor and material and that it was not the purpose or intention of the surety company to execute a bond which would create a liability

against the surety company in favor of any party except the obligee named in the bond, to-wit: the City of Ocala.

In the case of Rosenthall v. First National Fire Insurance Co., 74 Fla. 371, 77 So. R. 92, this Court say:

"An insurance policy as issued and accepted is *prima facie* the contract of the parties; and in order to have it reformed, the burden is on the plaintiff to show that a different contract was entered into from that which was reduced to writing, and this fact must be proved by clear, convincing and satisfactory evidence, not alone by a preponderance of the evidence but he must establish the fact by such evidence as to show conclusively that a mistake had been made, that such mistake was mutual to both parties, and to satisfy the court of such mistake beyond a reasonable doubt."

Before that time, in the case of Phenix Insurance Co. v. Hilliard, 59 Fla. 592, 52 So. R. 799, the Court say:

"Where by inadvertence or otherwise a policy of fire insurance is issued contrary to the intention of the parties thereto, a court of equity may in a proper case reform the policy so as to make it express the real agreement and intention of the parties, and as so reformed to enforce the policy in order to do complete justice in the controversy.

"The right to the reformation of an instrument is not absolute, but depends on an equitable showing."

And again when the same case came to this Court on appeal from final decree, Fidelity Phenix Fire Insurance Co. v. Hilliard, 65 Fla. 443, 62 So. R. 585, in an opinion written by Mr. Justice TAYLOR, the Court say:

"It is well settled that when a policy of insurance as issued does not conform to the contract which it purports to evidence, and the insured accepts the policy in the belief that it does conform to his contract, a court of equity will reform the instrument; and that after a loss has occurred a reformation of the policy and judgment for the loss may be had in the same action. But in reforming a policy of insurance, like that of any other written contract, the want of conformity to the agreement of the parties must be occasioned by a mistake which is mutual and common to both parties to the instrument. A mistake on one side may be a ground for rescinding, but not for reforming, the contract. Where the minds of the parties have not met, there is no contract, and hence none to be rectified.

It is equally well settled that an insurance policy as issued and accepted is *prima facie* the contract of the parties; and in order to have it reformed the burden is on the plaintiff to show that a different contract was entered into from that which was reduced to writing and this fact must be proved by clear, convincing and satisfactory evidence, not alone by a preponderance of the evidence, but he must establish the fact by such evidence as to such conclusively that a mistake had been made and to satisfy the court of such mistake beyond a reasonable doubt. 16 Am. & Eng. Ency. of Law, pp. 869 and 879 and numerous citations; Knight, Norman & Co. v. Turner C. L. Co., 55 Fla. 690, 45 So. R. 1016; Indian River Mfg. Co. v. Wooten, 55 Fla. 745, 46 So. R. 185; Prior v. Davis, 58 Fla. 510, 50 So. R. 535. Guided by these rules, we are of the opinion after careful consideration of the evidence submitted in the record,

that it does not justify the reformation decreed in this case. There is no proof that if there was a mistake made in the policy as written and delivered such mistake was mutual to both parties to the contract.''

Whether or not the surety company is bound by the bond posted to reimburse the City in event the City is required to pay the claims of the materialmen referred to in the bill of complaint is a question not presented in this case. Neither is the question of the City's liability to the materialmen presented in this case.

The sole question here is whether or not the City is entitled in a court of equity to have the bond reformed so as to make the surety liable for the claims of materialmen and we hold that under authority of the well settled rule in this State as enunciated in the cases above cited, the bill does not state a case which shows the City to be entitled to such relief and, therefore, the order overruling the demurrer should be reversed. It is so ordered.

Reversed.

WHITFIELD, P. J., AND STRUM J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.