841 So.2d 547 (2003)
NORWEGIAN CRUISE LINE, LTD., Appellant,
v.
Marilyn CLARK and Richard Clark, Appellees.
No. 2D02-945.
District Court of Appeal of Florida, Second District.
March 7, 2003.
*548 Curtis J. Mase and Beverly D. Eisenstadt of Mase & Gassenheimer, P.A., Miami, for Appellant.
Hendrik Uiterwyk of Abrahamson & Uiterwyk, and Raymond T. Elligett, Jr., of Schropp, Buell & Elligett, P.A., Tampa, for Appellees.
CASANUEVA, Judge.
Norwegian Cruise Line, Ltd., challenges the trial court's nonfinal order denying its motion to dismiss for improper venue, or, in the alternative, to transfer the cause to Dade County in accordance with the forum selection clause in its form cruise ticket contract. We reverse and, in so doing, join the majority of jurisdictions that have decided this matter and hold that the forum selection clause in the form cruise ticket that Marilyn and Richard Clark received shortly before their departure date is enforceable. This conclusion is in accord with Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). The Clarks argue that Shute is inapposite because the Supreme Court there assumed that the passengers could reject the offer of the cruise line "with impunity," but the Clarks could not do so "with impunity" because they would have forfeited some or all of their ticket price had they decided not to go on the cruise because of any objectionable clause in the form cruise ticket contract, including the venue provision. Given the evolution of business practices in today's world, especially where many contracts are formed electronically or telephonically, and where the offeree receives the complete contract only after paying the cost, we believe the majority view is the better reasoned statement of law. As we note below, the majority view is tempered by the passenger's ability to refuse to accept the offer under well-established principles of the law of contract formation.

Factual Background
In mid-December 2000, the Clarks ordered and paid for tickets through their travel agent for a cruise in the Caribbean aboard Norwegian Star, a cruise ship owned and operated by Norwegian. The departure date of the cruise was January 10, 2001. The Clarks received their tickets around December 17, 2000.[1] The form ticket, a folded, legal-sized document, had the title "Passenger Ticket Contract" at the top of the first page. Lower down on *549 the first page two warnings or notices were prominently displayed. The first warning stated:

IMPORTANT NOTICE
The Passenger's attention is specifically directed to the terms and conditions of this contract set forth below. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.
A bold black line creating a rectangular border around this notice attracted the reader's attention. The text of the warning was in white letters on a brown background, further highlighting it and distinguishing it from the surrounding text. The second warning, similarly highlighted, stated:
Passengers are advised to read the terms and conditions of the Passenger Ticket Contract set forth below. Acceptance of this Passenger Ticket Contract by Passenger shall constitute the agreement of passenger to these Terms and Conditions.

(Emphasis added.) Following this second warning, filling the rest of the first page and all of the reverse, were twenty-eight paragraphs of fine print detailing the contractual terms and conditions. Paragraph 1 stated:
This passenger ticket contract (hereafter "Contract") constitutes a Contract of Passage between the carrier, Norwegian Cruise Line (hereafter referred to as "Carrier"), and the passenger or purchaser (whether or not signed by or on his behalf). All the terms and provisions of all sides of this Contract, including all of the following matter printed below, are a part of this Contract to which the passenger and/or purchaser, both on his/her behalf and on behalf of any other person or persons, including children, for whom this ticket is purchased, acknowledge and agree to be bound thereby by accepting this Contract or transportation from the Carrier

. . . .
(Emphasis added.) Paragraph 28 stated:
This Contract shall be governed in all respects by the laws of the State of Florida and the laws of the United States of America. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from or in connection with this Contract and the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida, U.S.A.
The Clarks never objected to any term or condition of the ticket contract before they sailed as scheduled.
Unfortunately, Mrs. Clark slipped and fell on wet decking the first day out during the crush of the mandatory lifeboat drill, injuring her leg and ankle. The Clarks subsequently filed a negligence lawsuit against Norwegian in the Sixth Judicial Circuit in Pinellas County, ignoring the forum selection clause in their ticket contract. Citing the forum selection clause, Norwegian moved to dismiss or, in the alternative, to transfer the cause to the circuit court in Dade County but the trial court denied its motion. Norwegian then filed this appeal.

Discussion
A passenger ticket for a cruise and its terms are considered a maritime contract to be analyzed under federal maritime law. The Moses Taylor, 71 U.S. (4 Wall.) 411, 427, 18 L.Ed. 397 (1866); Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905, 909 (3d Cir.1988). The United States Supreme Court has held that forum selection clauses are prima facie valid even though they have not been historically favored, The Bremen v. Zapata *550 Off-Shore Co., 407 U.S. 1, 9-10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and they should be "given controlling weight in all but the most exceptional cases." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring, citing The Bremen, 407 U.S. at 10, 92 S.Ct. 1907). A party contesting enforcement of a forum selection provision bears the "heavy burden" of demonstrating why enforcement would be unreasonable. The Bremen, 407 U.S. at 17, 92 S.Ct. 1907; Hicks v. Carnival Cruise Lines, Inc., No. Civ. A. 93-5427, 1995 A.M.C. 281, 1994 WL 388678 (E.D.Pa. July 26, 1994). Shute directs that these clauses be scrutinized under a fundamental fairness standard. 499 U.S. at 595, 111 S.Ct. 1522. See also Smith v. Doe, 991 F.Supp. 781 (E.D.La.1998) (holding that the forum selection clause in the cruise ticket contract did not violate the statutory prohibition against limiting liability for negligence of vessel owners contained in 46 U.S.C. § 183c, and that such clause is prima facie valid and will be enforced unless the passenger shows insufficient notice of it or that the clause is fundamentally unfair).
This fundamental fairness standard requires that the provision at issue be "reasonably communicated" to the passenger, to ensure that the passenger receives sufficient notice of the conditions that he or she is accepting. Marek v. Marpan Two, Inc., 817 F.2d 242, 245 (3d Cir.1987). The court must gauge the physical characteristics of the contractual terms and the sufficiency of the warnings as to how well they alert the passenger to the terms under which the contract will be performed. Id. This two-part test is a question of law. Hodes, 858 F.2d at 908.
The Clarks do not, as they cannot, argue that the warnings on their ticket were insufficient to notify them of the contract terms that would apply to them if they took the cruise. Rather, they contend that because they received the tickets within the penalty period and would have forfeited an undetermined amount of the ticket price had they decided to cancel,[2] Norwegian provided them with insufficient notice of the ticket's conditions so as to render the contract fundamentally unfair. We, and the majority of jurisdictions, disagree. See, e.g., Hicks, 1995 A.M.C. 281 (E.D.Pa.1994) (holding that provided the passenger received the ticket prior to boarding, the issue is not when the passenger received the ticket but how the forum selection clause was communicated in the ticket).
The Supreme Court's case of Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622, is the seminal authority on venue provisions in form contracts for passage on cruise ships. Mrs. Shute, a resident of Washington State, bought a ticket for a *551 cruise with Carnival, a Florida-based company, for a cruise to Puerto Vallarta, Mexico, that departed from Los Angeles, California. While on board in international waters off the coast of Mexico, she slipped on a deck mat during a tour of the ship's kitchens and injured herself. She filed a negligence action in federal district court in the state of Washington. That court enforced the forum selection clause, Shute v. Carnival Cruise Lines, Inc., No. C86-1204D, 1988 A.M.C. 591 (W.D.Wash.1987), but was reversed by the Ninth Circuit, Shute v. Carnival Cruise Lines, 897 F.2d 377 (9th Cir.1990). The Supreme Court, in turn, reversed the Ninth Circuit, and began its discussion by extending its analysis of a case it had decided in 1972 that dealt with the forum selection clause in a contract between two international business entities, The Bremen, 407 U.S. at 1, 92 S.Ct. 1907. The Court held in Shute that, unlike the contract between two business corporations, a forum selection clause in a routine form passenger cruise line ticket, which was not subject to individual negotiation, was nonetheless enforceable and fundamentally fair because, among other reasons, the forum selection clause was not used as a means of discouraging cruise ship passengers from pursuing legitimate claims. 499 U.S. at 594, 111 S.Ct. 1522.
The Supreme Court found that the clause was permissible for several reasons: the cruise line had a special interest in limiting the forums in which it could be sued, the clause was beneficial in dispelling any confusion about where suits arising from the contract could be brought and defended, sparing the parties and the court the time and expense of pretrial motions to determine the correct forum, and passengers who purchased tickets containing a forum selection clause benefitted by reduced fares that reflected the savings the cruise line enjoyed by limiting the forums in which it may be sued. Id.
The cruise line in Shute, Carnival, had its principal place of business in Florida, so its forum selection clause designated courts in Florida as the jurisdiction in which to resolve disputes with its passengers. Id. at 588-89, 111 S.Ct. 1522. There was also no evidence of fraud or overreaching, despite the contract not being subject to individual negotiation. Mrs. Shute conceded receipt of notice of the forum selection clause, so the Supreme Court "presumed" she retained the option of "rejecting the contract with impunity." Id. at 595, 111 S.Ct. 1522. It concluded that the forum selection clause should be enforced.
It is the "with impunity" language of Shute that divides the parties before us. Justice Stevens, in his lengthy dissent, 499 U.S. at 597-605, 111 S.Ct. 1522, in which Justice Marshall joined, specifically objected to Mrs. Shute's predicament, which he considered unfair. He pointed out that many passengers receive actual notice of the forum selection clause long after their ability to obtain a refund had passed:
Of course, many passengers, like the respondents in this case, see ante, at 587, 111 S.Ct. 1522, will not have an opportunity to read paragraph 8 until they have actually purchased their tickets. By this point, the passengers will already have accepted the condition set forth in paragraph 16(a), which provides that "the Carrier shall not be liable to make any refund to passengers in respect of ... tickets wholly or partly not used by a passenger." Not knowing whether or not that provision is legally enforceable, I assume that the average passenger would accept the risk of having to file suit in Florida in the event of an injury, rather than cancelingwithout a refunda planned vacation at the last minute. The fact that the cruise *552 line can reduce its litigation costs, and therefore its liability insurance premiums, by forcing this choice on its passengers does not, in my opinion, suffice to render the provision reasonable. Cf. Steven v. Fidelity & Casualty Co. of New York, 58 Cal.2d 862, 883, 27 Cal. Rptr. 172, 377 P.2d 284, 298 (1962) (refusing to enforce limitation on liability in insurance policy because insured "must purchase the policy before he even knows its provisions").
Shute, 499 U.S. at 597-98, 111 S.Ct. 1522 (Stevens, J., dissenting). We share Justice Stevens's and Justice Marshall's concern. However, we do not find that the time frame that remained for the Clarks to reject the offer to cruise, approximately twenty-four days, too short a time that they could not have cancelled the cruise "with impunity." Accord, Thomas v. Costa Cruise Lines N.V., 892 S.W.2d 837 (Tenn. Ct.App.1994).
In Thomas, Mr. Thomas stated in his affidavit that he had not seen anything in the promotional literature or on the ticket about a forum selection clause and considered that he had concluded the agreement with the cruise line when he paid their required price and received their assurance that space described by them had been reserved for him. Id. at 841. The Tennessee Court of Appeals noted that under similar circumstances the Supreme Court in Shute enforced the forum-selection clause. The Tennessee appellate court found that Mr. Thomas's receipt of the ticket containing the contract terms about a month before embarkation, combined with his subsequent passage on the cruise, was sufficient to ratify the contract. The court noted that while the ticket contract was essentially a contract of adhesion, which may appear unfair to Mr. Thomas, "it would be more unfairand grossly inefficientto compel cruise lines and other common carriers to negotiate all contract terms with their many passengers." Id. Had there been different circumstances, such as where tickets with these limiting provisions were not given to passengers until they embarked, the court might have taken a different view. Id. at 841-42 (citing Barbachym v. Costa Line, Inc., 713 F.2d 216 (6th Cir.1983) (refusing to enforce a contractual limitations period because the ticket stated that all conditions of transportation were held by the group's leader)). In Mr. Thomas's case, he would have suffered a 25% penalty for cancelling the cruise at the time he received his ticket. Mr. Thomas found himself in a similar situation to Mrs. Shute's. Indeed, Mrs. Shute's ticket stated that the fare would be considered earned when paid and did not appear refundable at all. 892 S.W.2d at 841-42 n. 2. The Tennessee appellate court then assumed, as did the United States Supreme Court, "that such a provision would be unenforceable for a reasonable period of time following receipt of the ticket since it was not called to the passenger's attention in time to cancel with impunity."
We also question whether such a penalty could have been legally enforced had the Clarks decided not to take the cruise, but that question is not presently before us. That discussion would entail the principles of contract formation, specifically, the subissues of offer and acceptance. See Sumerel v. Pinder, 83 So.2d 692 (Fla.1955) (holding that to form a contract, it is necessary that there be a meeting of the minds by an acceptance and performance within the terms of the offer); Bullock v. Harwick, 158 Fla. 834, 30 So.2d 539, 541-42 (1947) (holding that a mere offer not assented to does not constitute a contract and so long as the proposal is not acceded to, it is binding on neither party and may be retracted); Continental Cas. Co. v. City of Ocala, 99 Fla. 851, 127 So. 894 (1930) *553 (holding that an insurance policy as issued and accepted is prima facie the contract of parties). Id.
The Supreme Court clearly recognized that policy benefits accrued to the cruise lines only when the policy regarding the forum for litigation was uniform. The Supreme Court was well aware that passengers like Mrs. Shute would not necessarily be able to obtain a full refund of the ticket price if they objected to the forum selection clause in the passenger ticket, but it nonetheless rejected the idea that some passengersthough not all passengers would not be able to avoid the forum selection clause simply because they received their tickets within the penalty period. Weighing the disadvantages to Mrs. Shute against the advantages to the cruise line industry, the Supreme Court nonetheless determined as a matter of law that this same type of passenger ticket with this same type of forum selection clause has public policy benefits, that there are overriding national concerns that mandated enforcement of the contract, and that inconsistent and varying adjudications within the fifty states would have a detrimental impact on federal law. Shute, 499 U.S. at 593-94, 111 S.Ct. 1522.
We find no factual or legal basis to distinguish this case from Shute or the many cases that comprise the majority view. Indeed, the majority of courts following Shute have recognized that many (if not most of the passengers, like the Clarks) never read the ticket. See, e.g., Cross v. Kloster Cruise Lines, Ltd., 897 F.Supp. 1304 (D.Or.1995); Lousararian v. Royal Caribbean Corp., 951 F.2d 7 (1st Cir.1991); Kendall v. American Hawaii Cruises, 704 F.Supp. 1010, 1017 (D.Haw. 1989); Marek v. Marpan Two, 817 F.2d 242. These courts have determined that the reasonable communication of the ticket, that is, the ability to become informedand not the timing of its purchase or receiptcontrols the issue of whether the forum selection clause, or any other clause for that matter, was reasonably communicated to the passenger. See also Viney v. Kloster Cruise, Ltd., No. 96-20480,1997 AMC 544 (N.D.Cal.1996) (holding that the passenger was bound by the forum selection clause even where she received her ticket only a few days before the cruise and where she could not have canceled her trip without incurring a penalty).
We adopt the majority rule as discussed above and, accordingly, reverse and remand with instructions to transfer this cause to the Eleventh Judicial Circuit Court in Dade County.
Reversed and remanded with instructions.
ALTENBERND, C.J., and KELLY, J., concur.
NOTES
[1] Norwegian claimed it sent the tickets to the Clarks' travel agent via air express on December 15, 2000, so they would certainly have arrived there by December 17, 2000. The travel agent forwarded the tickets to the Clarks, but Mrs. Clark claimed she received the tickets only twelve days before the sailing date of January 10, 2001. Because both the travel agent and the Clarks received the tickets within the penalty period, our analysis does not change. Hodes v. S.N.C. Achille Lauro ed Altri-Gestione, 858 F.2d 905, 912 (3d Cir.1988) ("through their own and their agent's possession of the tickets, the appellees are charged with notice of the ticket provisions"), abrogated on other grounds, Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); Marek v. Marpan Two, Inc., 817 F.2d 242, 247 (3d Cir.1987) (determining that a friend's possession of ticket information is sufficient to charge traveler with notice).
[2] Norwegian and the Clarks dispute just how much money the Clarks would have forfeited had they not accepted the terms of the contract and declined to cruise aboard the Norwegian Star after they received their tickets.

In any event, the forfeiture amount is not controlling. The majority view is that forum selection clauses, such as Norwegian's, are enforceable because the passenger had adequate and reasonable notice of them, despite the cancellation fee. See, e.g., Ferketich v. Carnival Cruise Lines, No. 02-CV-3019, 2002 WL 31371977 (E.D.Pa. Oct.17, 2002) (enforcing similar clause although passenger would have paid a $350 cancellation fee had she not accepted the contract terms and refused to cruise); Cross v. Kloster Cruise Lines, Ltd., 897 F.Supp. 1304, 1309 (D.Or.1995) ($400 cancellation fee); Hicks v. Carnival Cruise Lines, Inc., No. Civ. A. 93-5427, 1994 WL 388678 (E.D.Pa. July 26, 1994); Miller v. Regency Maritime Corp., 824 F.Supp. 200, 203 (N.D.Fla.1992) (enforcing forum selection clause despite 45% of ticket cost forfeiture provision).