JOHN W. BULLOCK v. EARL R. HARWICK, JOHN M. MURRELL, ROSALIND GARFUNKEL and COLOMBIAN EXPORT LINE, INC., a Florida Corporation.

30 So. (2nd) 539
April 29, 1947
Rehearing Denied June 13, 1947

January Term, 1947
Special Division A

*Bertram R. Coleman,* for appellant.

*John·M. Murrell* and *J. M. Flowers,* for appellees.

CHILLINGWORTH, Associate Justice:

This is an appeal from a final decree dismissing a bill for specific performance after a trial had been had before the court. The decree contained no findings on the part of the court.

It may be observed that tersely worded findings of fact and, when appropriate, an equally brief statement of the controlling conclusions of law of the trial court, placed in a decree, are often informative to counsel, and of great aid to the appellate court. They are not mandatory, (F.S.A. 63.66), but they serve as a guide by which the Supreme Court can check the ʼcorrectness of the findings of fact and the legal conclusions of the Chancellor. Day v. Weadock, 101 Fla. 333, 134 So. 525; Gregg-Maxcy, Inc. v. Bateman, 119 Fla. 490, 160 So. 745; Central Hanover Bank & Trust Co. v. Smith, 134 Fla. 845, 184 So. 513. In Dade County v. South Dade Farms, 133 Fla. 288, 182 So. 858, this Court not only approved but commended Chancellors in making specific findings of fact.

After a series of preliminary letters and telegrams the vendor, the principal defendant in the suit below, and appellee here, sent a telegram as follows:

"RE PURCHASE STOCK COLOMBIAN EXPORT LINE BY BULLOCK STOP HARWICK TO DELIVER ALL COLOMBIAN STOCK RESIGNATION OFFICERS RECORDS TO BULLOCK IN EXCHANGE FOR BANK DRAFT PAYABLE TO HARWICK OF MIAMI BEACH FIRST NATIONAL BANK IN AMOUNT OF SEVENTY-FIVE

THOUSAND DOLLARS STOP COLOMBIAN EXPORT INDEBTEDNESS CONSISTS MORTGAGE DUE MIAMI BEACH HEIGHTS OF SEVENTY-FIVE THOUSAND DOLLARS OF RECORD NOTHING OTHERWISE STOP HARWICK AGREES PAY INTEREST ON THIS MORTGAGE TO CLOSING DATE STOP NO COMMISSIONS ACKNOWLEDGED BY BUYER OR SELLER HARWICK PAYS JUDGE SOUTHERLAND FEE TWO THOUSAND DOLLARS ON CLOSING STOCK DEAL STOP NO ESCROWS NECESSARY STOP ANY PRIOR UNDERSTANDINGS OR IMPLICATIONS *VOID* STOP CLOSING JUDGE SOUTHERLAND OFFICE STOP HARWICK EXPECTS ARRIVE MIAMI ABOUT SEPTEMBER 21ST."

On September 24th, the vendor and the vendee, plaintiff-appellant, met in the office of an attorney in Miami Beach. The vendor expected to close the sale at that time. He asserted that he had in his pocket all of the original stock certificates, the resignations of the three officers of the corporation, and that he had with him the corporate minute book. But he did not expose the certificates or the resignations. Doubt is cast upon his actual possession of these certificates. He testified that he had obtained them from a safety deposit box on the morning of September 24th, only readily to admit his obvious mis-statement, when confronted by evidence of the bank vault officials showing that he had made no entry to the box on that day, or prior thereto, or that he was even then authorized to have access to the box. He did not have the stock record book with him, or any evidence of the fact that the only indebtedness of the corporation was the purchase money mortgage due on the property or that the corporation was in good standing at the time.

The vendee did not have with him a bank draft of any nature, nor did he have the requisite amount in cash or a certified check or cashier's check. The vendee asserted that he had funds available which could be readily obtained as soon as the vendor was in a position to do the things he was required to do by his offer. None of the purchase price was ever paid. No writing was ever signed by the vendee. While the evidence is conflicting, it is reasonably manifest that the vendor did not definitely withdraw the offer, nor did the vendee definitely accept the offer. Neither, by words or conduct, clearly evidenced the obligations he desired to assume,

or his real intentions. At the conclusion of the conference the vendor, in relating his parting words to the vendee, said: "I told him I would be back in a few days; If I was interested further I would get in touch with him." The vendee was no more precise in his attitude than the vendor.

The parties separated. No further action was taken by the vendor except to phone the attorney who arranged the conference and with whom they had met the day before. The vendor inquired of the attorney whether the attorney thought that the vendee really had the cash for the transaction and would go through with the deal. In response to an affirmative answer, he made no further statement.

On December 26, 1945, about three months later, the vendee made a tender of $75,000.00 cash to the attorney for the vendor. Upon its rejection the vendee immediately filed suit for specific performance.

The record tells a tale of two skillful and wary traders in action. The vendor was willing to close the deal September 24th and apparently willing vaguely and indifferently to keep the offer open. But he specifically declined to sign a contract, or execute any further writing, or to produce any evidence of a present ability to fully perform, until the cash, or its equivalent, was actually in sight. The vendee, anxious to keep the offer open, was careful not to accept in writing. He, being either unwilling or unable to produce the cash and also unwilling to be bound in law for the purchase price, was also vague and indifferent about any definite verbal acceptance of the offer. After September 24th, the vendor and vendee saw each other a number of times, usually in a restaurant where they would have lunch, but neither ever approached the other about the sale or the prospects of closing any sale. One may fairly infer that had the market value of this property gone down, rather than up, between September 24th and December 26th, no suit would have been filed by the purchaser. Without the institution of this suit, the purchaser would not have been bound at any time to pay the purchase price of this property, unless he had done something more than he had done prior to then.

Pomeroy's Specific Performance of Contracts, 3rd Edition, Paragraphs 63, 64 and 66, clearly expressed the law, in the following excerpts:

"As the acceptance is the means by which the minds of two parties are brought to an agreement, it must be so expressed as to show that there is an actual *assent*, a meeting of the two minds, and that there is an assent upon exactly the same matters. To produce a concluded contract the acceptance must, therefore, possess certain fundamental requisites. First. It must be absolute, unambiguous, unequivocal, without condition or reservation. . . . Second. As the assent of the parties should be given to exactly the same matters, the acceptance must not vary from the terms of the offer, either by way of omission, addition, or alteration; if it does vary in either of these modes, no contract is concluded thereby, the transaction remains in the state of negotiation, and neither party is bound, . . . The acceptance may be in writing, by parol, or by acts. . . . In whatever mode the assent is signified, whether by writing, by words, or by conduct, it must be actually expressed in some overt manner, by some overt acts; a mere mental intention to accept an offer, however carefully formed, will not create a contract."

This Court held in Prescott v. Mutual Benefit Health & Accident Association, 133 Fla. 510, 183 So. 311, in an opinion by Justice BUFORD, that a mere offer not assented to constitutes no contract, for there must be not only a proposal but an acceptance, and, so long as the proposal was not acceded to, it is binding on neither party and may be retracted. Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498; Jones et al. v. Toms, 150 Fla. 873, 9 So. (2) 96; 17 C.J.S. 378, 395; Morgan v. Patillo, 24 Fed. (2) 204.

Therefore we hold that it was not clearly established that there was a definite acceptance by the vendee on September 24th and that the offer was effectually withdrawn by the action and words of the vendor on September 24th and confirmed by his conduct thereafter. The acceptance of December 26th was too late.

Affirmed.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.