**John O. KROEZE, Jack M. McLarty, and Leland S. Duddleston, Jr., d/b/a Kroeze, McLarty & Duddleston, Plaintiffs-Appellants,**

v.

**CHLORIDE GROUP LIMITED, an English Company, and Marine Bank & Trust Company, a Member of First Florida Bancorporation, Defendants-Appellees.**

No. 76–2298.

United States Court of Appeals,
Fifth Circuit.

May 11, 1978.

Carl F. André, Perry, Phillips, Crockett, Morrision & Herring, Jackson, Miss., for plaintiffs-appellants.

Pat H. Scanlon, Jackson, Miss., for defendants-appellees.

Before GOLDBERG, HILL and RUBIN, Circuit Judges.

HILL, Circuit Judge:

Plaintiffs-appellants John Kroeze, Jack M. McLarty and Leland S. Duddleston, Jr., partners in the Jackson, Mississippi stock brokerage firm of Kroeze, McLarty and Duddleston instituted suit against Chloride Group Limited, an English company, and defendant's agent, Marine Bank & Trust Company, a Florida corporation, in the Southern District of Mississippi alleging

that the defendant had breached a contractual relationship calling for the purchase by the defendant of certain securities tendered by the plaintiffs. Whether or not a contract was formed is the principal issue we must decide.

The parties by stipulation submitted the case to the District Court for decision on documents, depositions, and affidavits. The District Court, holding that no contract had been formed, entered judgment against the plaintiffs. Plaintiffs appeal. We affirm.

## THE FACTS

On June 8, 1973, defendant Chloride Group Limited announced its intention to make a tender offer to the shareholders of the Connrex Corporation for the purchase of 1,316,500 shares of Connrex stock at the price of $16.00 per share.

Accordingly, Chloride sent to Connrex stockholders and stockbrokers, including the plaintiffs, a document entitled, "Offer to Purchase 1,316,500 Shares of Common Stock of the Connrex Corporation for Cash at $16.00 per Share." This document in pertinent part provided as follows:

To the Holders of Common Stock of The Connrex Corporation:

1. *Number of Shares.* Chloride Group Limited, an English company ("Chloride"), hereby *offers to purchase* 1,316,500 shares of Common Stock ("Connrex Stock") of the Connrex Corporation, a Delaware corporation ("Connrex"), *if duly tendered prior to termination of this Offer, subject to the terms and conditions set forth herein and in the Letter of Transmittal relating to this Offer.* (emphasis supplied)

If less than 960,000 shares of Connrex Stock are validly tendered, Chloride will not be obligated to acquire any shares, but may acquire all, but not less than all, shares tendered. If 960,000 or more shares are validly tendered, Chloride will be obligated to purchase all shares tendered up to and including 1,316,500. In no event will Chloride purchase more than a maximum of 1,316,500 shares. If more than 1,316,500 shares of Connrex

Stock are validly tendered prior to 12:00 noon, New York City Time, on July 23, 1973 and not withdrawn as permitted by Section 3 hereof, shares will be purchased pro rata (subject to downward adjustment to avoid the purchase of fractional shares) according to the number of shares tendered by each stockholder. If 1,316,500 more shares are not so tendered prior to such time on July 23, 1973, all shares so tendered thereafter prior to the expiration of this Offer will be selected on a first-come, first-served basis until an aggregate of 1,316,500 shares have been validly tendered. This Offer will expire at 5:00 P.M., New York City Time, on August 1, 1973, unless extended by Chloride, or at such earlier time subsequent to 12:00 noon, New York City Time, on July 23, 1973 as 1,316,500 shares of Connrex Stock shall have been validly tendered and not withdrawn. No fractional shares will be purchased. Certificates for all shares tendered and not purchased will be returned promptly after the expiration of this Offer. In the event of proration, certificates representing the tendered shares not purchased will be returned as soon as practicable.

.    .    .    .    .

8. *Tender of Shares.* Any stockholder of Connrex wishing to tender all or any portion of his shares should (a) complete and sign the Letter of Transmittal, or a facsimile thereof, in conformity with the instructions on the back thereof and submit it, with the certificates for shares of Connrex Stock to which it relates and any other required documents, to the Depositary or the Forwarding Agent referred to below or (b) request his broker or bank to effect the transaction for him. If certificates, Letter of Transmittal and other required documents are submitted directly to the Depositary or Forwarding Agent, no brokerage commissions should be payable by the stockholder. Any other arrangements by the stockholder with a broker or bank are in such stockholder's discretion and for his account.

.    .    .    .    .

*This Offer and the Letter of Transmittal will constitute an agreement between the tendering stockholder and Chloride, subject to the conditions of this offer and the Letter of Transmittal, when the duly executed Letter of Transmittal and accompanying certificates and other documents, the duly executed Letter of Transmittal with guarantee, or the letter or telegram from such member firm or such commercial bank or trust company, as the case may be, are received in acceptable form by the Depositary or the Forwarding Agent.* (emphasis supplied)

By executing and delivering the Letter of Transmittal as set forth above, the stockholder will be irrevocably appointed designees of Chloride as proxies, effective when, and only to the extent that, Chloride purchases the shares tendered by such stockholder; to such extent, all prior proxies appointed by such stockholder will be revoked. Such designees will vote any shares of Connrex Stock as they in their discretion deem proper at any annual, special or adjourned meeting of Connrex's stockholders. By such action, the stockholder will also authorize each such attorney or substitute after such purchase to receive all dividends and other distributions payable with respect to such shares and to exercise all other rights of beneficial ownership of such shares.

This Offer is to be commenced on July 10, 1973. If 960,000 shares are tendered and purchased, Chloride will own approximately 51% of the outstanding shares of Connrex Stock. If 1,316,500 shares of Connrex Stock are tendered and purchased, Chloride will own approximately 70% of the outstanding shares of Connrex Stock. In no event will Chloride purchase more than 1,316,500 shares of Connrex Stock pursuant to this Offer and any extension or extension thereof.

. . . . .

17. *Miscellaneous.* Chloride reserves the right to waive any condition of this Offer or any defect in the tendering of shares. This Offer is not being made, nor will tenders be accepted from holders of Connrex Stock, in any jurisdiction in which the making or acceptance thereof would not be in compliance with the securities of Blue Sky laws of such jurisdiction. No person has been authorized to give any information, or make any representation on behalf of Chloride not contained herein or in the Letter of Transmittal, and no such information or representation may be relied upon as having been authorized.

Accompanying Chloride's Offer to Purchase was a document entitled "Letter of Transmittal." In pertinent part, this document provided as follows:

Important: This Letter of Transmittal should be sent to the Depositary or Forwarding Agent referred to below, together with your stock certificates and any other required documents. Your Broker or Bank May Assist You in Completing This Form.

Dear Sirs:

*The undersigned hereby irrevocably tenders to Chloride Group Limited ("Chloride"), pursuant to its Offer to Purchase dated July 10, 1973 ("the Offer"), upon the terms and conditions set forth in the Offer and this Letter of Transmittal, the certificates described below representing shares of Common Stock ("Connrex Stock") of The Connrex Corporation ("Connrex") for $16 per share.* The undersigned acknowledges receipt of the Offer. (emphasis supplied).

The undersigned hereby delivers to you for sale to Chloride and transfer to Chloride or its nominee the shares of Connrex Stock indicated above and subject to acceptance of this tender by Chloride and payment of the purchase price, hereby sells, assigns and transfers to Chloride or such nominee all right, title and interest in the shares so tendered to and accepted and purchased by Chloride, and irrevocably constitutes and appoints Marine Bank & Trust Company, Tampa, the true and lawful attorney of the undersigned to transfer such shares on the books of Connrex in the State of Florida. If the time for making tenders is extended, the

authority to tender and to transfer such shares is correspondingly extended.

*The undersigned understands that a tender is not made in acceptable form until timely receipt by the Depositary or the Forwarding Agent of this Letter of Transmittal, or a facsimile hereof, together with the certificates for the shares of Connrex Stock referred to in such Letter and all accompanying evidence of authority required by the instructions on the reverse hereof (except as provided in Paragraph 4 of such instructions), in form satisfactory to Chloride at which time the Offer and this Letter of Transmittal will constitute an agreement between the tendering stockholder and Chloride, subject to the conditions set forth therein and herein. All questions as to validity, form, eligibility, time and acceptance of any tender hereunder will be determined by Chloride, and its determination shall be final and binding.* Chloride reserves the right to waive any of the conditions of the Offer or any defect in the tendering of shares. (emphasis supplied).

The undersigned hereby irrevocably appoints Messrs. M. O. Edwards, D. G. Cochrane, P. C. Aspinall and J. A. Gilchrist (all of whom are directors and/or employees of Chloride), and each of them, the attorneys and proxy or substitute shall in his sole discretion deem proper, all of the shares of Connrex Stock tendered hereby which the undersigned is entitled to vote at any annual, special or adjourned meeting of Connrex stockholders and which have been purchased by Chloride prior to the date of such meeting. The proxy granted hereby is irrevocable, is granted in consideration of the purchase by Chloride of such shares, and upon such purchase shall revoke any other proxy granted by the undersigned to vote, at any time after such purchase, such shares. The undersigned hereby authorizes such attorney or substitute to receive all dividends and distributions payable after such purchase with respect to such shares and to exercise thereafter all other rights of beneficial ownership thereof.

## INSTRUCTIONS FORMING PART OF TERMS AND CONDITIONS OF THE OFFER

1. *The Letter of Transmittal or a facsimile thereof, filled in and signed, must be used in connection with a tender of shares. . . .* (emphasis supplied)

6. No alternative, conditional or contingent tenders will be accepted and no fraction of a share will be purchased.

7. If shares are registered differently on several stock certificates, it will be necessary for the stockholder to complete, sign and submit as many separate Letters of Transmittal as there are different registrations of such stockholder's shares.

8. Certificates representing all shares tendered and not purchased will be returned promptly after expiration of the offer.

9. All tendering stockholders waive any right to receive notice of the acceptance of their tenders.

Mr. Frank A. Jones, the owner of 200 shares of Connrex, and Mr. Carroll H. Kennedy, the owner of 2,000 shares of Connrex, decided to accept Chloride's offer and requested the plaintiff-stockbrokers to handle the acceptance of the offer for them. The plaintiffs first had the Connrex shares registered in the brokerage firm's name.

On July 17, 1973, a secretary at the brokerage firm prepared the tender in response to Chloride's offer. The stock certificates representing the 2,200 shares were endorsed.

On the front of the Letters of Transmittal, the secretary typed in the name of the registered owner and the name of the beneficial owners. However, the secretary failed to sign in the space provided for signature on the back of the Letters of Transmittal. The shares and Letters of Transmittal were mailed to Marine Bank & Trust Company, the Depository Agent of Chloride.

On July 18, plaintiff Duddleston telephoned Marine Bank to determine whether or not the stock certificates and Letters of

Transmittal had been received. Mr. Jerry Lance, the Bank officer in charge of processing the Letters, stated that the Letters and certificates had been received but had not been reviewed.

On July 23, having received the tender of shares in excess of the 1,316,500 shares it wished to purchase, Chloride terminated its Offer to Purchase.

Chloride purchased for $16 per share 1,316,500 shares. Since a greater number of shares had been properly tendered, 86.6% of the total number of such shares of each stockholder was purchased and the remaining 13.3% of the shares were returned to the respective stockholders. The Bank returned 510 Letters of Transmittal to Connrex stockholders as being unacceptable. Most of the Letters were returned because they were received after the termination date. Five of the transmittals, including those involved here, were rejected for failure to sign the Letter of Transmittal.

On August 7, Mr. Kroeze received in the mail all of the stock certificates together with forms stating, "The form in which your tender was presented was incorrect." Mr. Duddleston telephoned the Bank to inquire why the stock certificates had been returned. He was told that the tender had been rejected because the Letters of Transmittal had not been signed.

On August 21, 1973, the plaintiffs paid Mr. Jones $2,750.00 for 172 shares of Connrex Stock (which was 86% of the 200 share lot) and paid Mr. Kennedy $27,584.00 for 1,724 of his 2,000 share lot. Shortly thereafter, the plaintiffs instituted suit against the defendants.

### THE LAW

Upon submission of the case, the District Court as an initial matter determined that the laws of Florida would be applied rather than the laws of Mississippi.

The parties have not disputed the District Court's choice of law and thus, we find that the parties have agreed to the application of Florida law to the case. In any event, there does not appear to be any conflict between the pertinent Florida and Mississippi authorities.

The District Court in its analysis of the transaction found that no contract had been formed. He reasoned that Chloride's "Offer to Purchase" was not an offer but rather an invitation for offers. As such, he held that Chloride did not accept the plaintiff's offers.

■ Both parties disagree with the District Court that Chloride's "Offer to Purchase" was not an offer. We agree with the District Court that no contract for the sale of the securities was ever made. However, we agree with the parties that the offer was not merely an invitation for offers.

In reaching its conclusion that Chloride's "offer" was, in fact, an invitation for offers, the District Court applied cases dealing with construction bids. The case of a tender offer is an exception to the rule. As the leading authorities explain:

The status of tender offers under contract law also deserves some comment. In most instances, *tender offers are conditional offers to purchase securities. The acceptance takes place when the shareholder commits himself to tendering his shares.* Many cash tender offers are not specifically identified as such but instead are represented as "invitations for tenders." While the use of the term "invitation for tenders" implies that the person seeking to purchase the securities is requesting the shareholder to make an offer, the terms and conditions of the invitation normally suggest otherwise. Thus, whether called an "offer to purchase" or an "invitation to tenders," *it is the purchaser who is actually making the offer and not the shareholder and a binding contract is created when the shareholder tenders his securities in accordance with the terms of the offer.* In contrast, an "invitation for tenders" requested by a governmental authority for bids on a construction contract or by a toll highway commission to purchase bonds for cancellation are in most instances requests to contractors or bondholders to make an

offer. In such circumstances, the tender must be accepted by the authority or commission before there is a binding contract. E. Aranow & H. Einhorn, Tender Offers for Corporate Control 60 (1973). *See Smallwood v. Pearl Brewing Company,* 489 F.2d 579, 597 n. 22 (5th Cir. 1974).

In their primary arguments, plaintiffs contend that the transmittal of the endorsed stock certificates with the unsigned Letters of Transmittal, which identified the registered and beneficial owners of the shares, constituted substantial performance of the contract and thus an acceptance of the offer. Plaintiffs stress that the defendants had the power to waive any defects. Plaintiffs marshal a wealth of authority holding acceptance may occur in any reasonable manner.

■ As a general matter, plaintiffs are correct. In relation to contracts for the sale of goods, Section 2–206(1)(a) of the Uniform Commercial Code (U.C.C.), F.S.A. § 671.206(1)(a), may be said, by analogy, to accurately state the law.

Unless otherwise unambiguously indicated by the language or circumstances: (a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances.

Yet even under the liberal rules of contract formation as contained in the U.C.C., the Code drafters still recognized and gave approval to an ancient and cardinal rule of the law of contracts. The offeror is the master of his offer. An offeror may prescribe as many conditions, terms or the like as he may wish, including but not limited to, the time, place and method of acceptance. Florida has long given its approval to this rule. *Craddock v. Greenhut Construction Company,* 423 F.2d 111 (5th Cir. 1970); *Bullock v. Hardwick,* 158 Fla. 834, 30 So.2d 539 (1947); *Webster Lumber Co. v. Lincoln,* 94 Fla. 1097, 115 So. 498 (1927); *Strong & Trowbridge Co. v. H. Baars & Co.,* 60 Fla. 253, 54 So. 92 (1911).

■ In the instant case, a review of Chloride's Offer to Purchase and Transmittal Letter leaves no doubt that the offeror expressly, unambiguously, and unequivocally required that the Transmittal Letter be signed in order to be a proper acceptance of the offer. A recitation of the multiple provisions requiring a properly executed Letter of Transmittal as a condition of a valid tender is unnecessary. Plaintiffs' argument is meritless.

■ Plaintiffs in their secondary argument contend that the Transmittal Letter was actually signed. Plaintiffs contend that the presence of the brokerage firm's name in the registered owner's space in the Transmittal Letter may operate as a signature.

Section 1–201(39) of the Uniform Commercial Code, F.S.A. § 671.1–201(39) provides that " 'signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing."

Official Comment 39 to Section 1–201, as adopted in Florida, provides:

39. "Signed". New. The inclusion of authentication in the definition of "signed" is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.

While Section 1–201(39) of the U.C.C. may be the proper law within which to analyze the transaction, the record, however, conclusively belies the assertion by plaintiffs that, by having their secretary type their firm name in Letter of Transmittal block for registered owners, they had signed the document. The secretary who prepared the Letters was deposed. She testified that she never intended that filling in

the blank for registered owner would operate as plaintiffs' signature.

Q. Now, at the time ·you typed in Kroeze, McLarty & Duddleston here in this square where it says, "Name and address of registered owner," did you intend for that to be the signature of the company, or did you even think about it?

A. No.

Plaintiffs' contention is meritless.

In their third enumeration, plaintiffs contend that by failing to return the rejected stock certificates to the plaintiffs until August 7, 1973, the defendants by their silence and retention of the shares led the plaintiffs to believe their tender was acceptable and, thus, are estopped from asserting the noncompliance of the tender.

Plaintiffs rely on F.S.A. §§ 678.8–319(3), 8–319(c) of the U.C.C., which provides:

A contract for the sale of securities is not enforceable by way of action or defense unless . . . (c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten (10) days after its receipt; . . .

Plaintiffs contend that Chloride should be required to purchase the stock because of Chloride's failure to send any objection to plaintiffs within 10 days of receipt of the stock certificates.

We hold that § 8–319 is inapplicable. Subsection (c) is designed to rescue certain oral contracts from the harshness of the Statute of Frauds. As such, the subsection contemplates that a previous oral contract has been formed. In this case, no oral contract has ever existed or even been alleged. Therefore the authority plaintiff urges is inapplicable. *See Phillips v. Zimring*, 284 So.2d 233 (Fla.App.1973). Plaintiffs' contention is meritless.

We also reject as did the District Court that Chloride's silence and delay in returning the stock certificates operated under general contract principles to form a contract. Plaintiffs have not shown that the defendants waived the defective tender. On the contrary, the evidence discloses that every defective tender was rejected and that no transmittals were given special favor. If the tender were improper, it was rejected. Plaintiffs' tender was improper, no contract was formed and there ends the matter.

The judgment of the District Court is AFFIRMED.