The **INDIANA NATIONAL BANK and Merchants National Bank & Trust Company of Indianapolis, Plaintiffs-Appellants,**

v.

**MOBIL OIL CORPORATION, Defendant-Appellee.**

**No. 77-2253.**

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1978.

Decided June 19, 1978.

Jerry P. Belknap, Indianapolis, Ind., for plaintiffs-appellants.

Theodore R. Boehm, Indianapolis, Ind., for defendant-appellee.

Before SWYGERT, Circuit Judge, and MOORE, Senior Circuit Judge,* and SPRECHER, Circuit Judge.

SPRECHER, Circuit Judge.

The primary issues on this appeal are whether, where sophisticated parties agree to trigger delivery of securities under a tender offer by a "public announcement" of a stated event rather than by actual notice, the law nevertheless imposes a notice requirement on the offeror and whether, assuming that a "public announcement" is an appropriate way to trigger certain events, a press release is the proper and normal means of making a public announcement.

I

In August 1974, defendant Mobil Oil Corporation ("Mobil"), made a cash tender offer for the securities (common and preferred stock) of Marcor, Inc., ("Marcor").[1]

---

\* Senior Circuit Judge Leonard P. Moore of the United States Court of Appeals for the Second Circuit is sitting by designation.

1. Mobil's offer was for majority control of Marcor, which was the equivalent of at least 17,-250,000 common shares. Since Marcor pre-ferred shares were traded generally at a price twice that of common, one share of preferred counted as two shares of common for the purposes of the offer and the offer price for preferred was twice that of common. The offer was made on August 13, 1974, and expired at 5:00 p. m. on August 23, 1974.

Prior to the offer, Marcor common stock was trading at about $27.00 per share. Mobil proposed to purchase 17,250,000 shares at $35.00 per share, a healthy premium over the market price. Mobil agreed in the tender offer that if more than that number of shares were tendered and if Mobil decided to accept less than all the tendered shares, Mobil was required to accept properly tendered shares pro rata as among all properly tendering shareholders. This result is mandated by section 14(d)(6) of the Williams Act. *See* 15 U.S.C. § 78n(d)(6) and Paragraph 1(b) of the Tender Offer. Over 33,000,000 shares ultimately were tendered, representing substantially all of the outstanding available shares of Marcor.

Paragraph 4 of the Tender Offer provided three alternative methods of tendering shares. The first method was by actual delivery of the share certificates to the named Depositary or one of its forwarding agents together with a Letter of Transmittal. This alternative was open to all shareholders and did not require the intervention of a bank or broker. Approximately 86% of the shares were tendered by this method.

The two other means of tendering did not require the immediate delivery of the certificates and were only available to "eligible institutions," which included commercial banks and trust companies, members of national securities exchanges and members of the National Association of Securities Dealers. The delayed delivery option in Paragraph 4 at issue here provided:

> Tenders may be made without the concurrent deposit of stock certificates if such tenders are made by or through a firm which is a member of a registered national securities exchange or of the NASD or by or through a commercial bank or trust company in the United States ("Eligible Institution"). In such cases a properly completed and executed

Letter of Transmittal must be received by the Depositary or a Forwarding Agent prior to the expiration of this Offer and the guarantee of delivery contained in the Letter of Transmittal must have been executed by an Eligible Institution. Payment for Shares so tendered and purchased will be made only against the deposit with the Depositary of the certificates and any other documents required by the Letter of Transmittal no later than eight business days after public announcement by Mobil that a specified number of Shares will be purchased under this Offer if all of the terms and conditions of this Offer are satisfied.

The plaintiffs, the Indiana National Bank ("INB") and Merchants National Bank & Trust Company of Indianapolis ("Merchants") are national commercial banks located in Indianapolis, Indiana, that attempted to tender Marcor securities on behalf of their customers and trust accounts. Plaintiffs were eligible to and did exercise the delayed delivery option contained in the Mobil offer and set out above.[2] Plaintiffs fulfilled the first portion of the delayed delivery option by forwarding to the Depositary properly completed Letters of Transmittal and properly executed delivery guarantees during the offer period (Findings of Fact 6, 7). The dispute arises over the second portion of this option which required plaintiffs to deliver the stock certificates in accordance with their guarantees by the close of the eighth business day after Mobil publicly announced the number of shares it would purchase.

Plaintiffs contended that Mobil failed to make the required public announcement. They also maintained that the tender offer omits material information concerning how the "public announcement" would be made in violation of section 14(e) of the Securities and Exchange Act of 1934 ("Act").[3] Final-

---

**2.** INB tendered 3,000 shares of Marcor common stock and 26,084 shares of preferred. Merchants tendered 1,000 shares of Marcor common. For their part in the solicitation process, INB and Merchants were to receive a commission from Mobil. *See* Paragraph 10 of the Tender Offer.

**3.** Section 14(e) provides:
It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any

ly, they contended that by virtue of their completion of the first phase of the delayed delivery option they are entitled to have their tendered securities purchased pro rata under the provisions of section 14(d)(6) of the Act.[4]

Mobil responded that the public announcement was properly made in the form of a press release to the Dow Jones Wire Service, Reuters Economic Services, Platts Oilgram, the Oil and Gas Journal, Petroleum Intelligence Weekly, and a press service which distributed it to the wire services, radio and television networks and major newspapers. Moreover, Mobil contended that neither provision of the Act applies to the instant controversy. Mobil also denied any breach of contract and raised several affirmative defenses.

The district court, after full trial, held in favor of Mobil and against the banks on all three counts of the complaint. Plaintiffs appeal.

## II

Plaintiffs' first two claims are based on sections 14(d)(6) and 14(e) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78n(d)(6) and (e), which sections were added by the Williams Act of 1968. The general purpose of the Williams Act is protection of the shareholder of a target corporation who is presented with a cash tender offer so that the shareholder has the information necessary for an informed investment decision. *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 22–23, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). Here the plaintiff banks claim to be representing the interests of such target investors and shareholders.[5] We will address the section 14(d)(6) claims in this portion of the opinion and consider the section 14(e) claims in the following portion.

Section 14(d)(6) requires that, when an offeror requests tenders of less than all of the outstanding securities of a class of securities and a greater number is "deposited" under the invitation, such offeror is bound to accept those securities pro rata. Both parties agree with the conclusion of the district court that the word "deposited" as used in section 14(d)(6) is equivalent to "properly tendered" (Plaintiffs' Brief p. 48; Defendant's Brief p. 58). Therefore, the narrow issue presented is whether the secu-

---

fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

15 U.S.C. § 78n(e).

4. Section 14(d)(6) provides:

Where any person makes a tender offer, or request or invitation for tenders, for less than all the outstanding equity securities of a class, and where a greater number of securities is deposited pursuant thereto within ten days after copies of the offer or request or invitation are first published or sent or given to security holders than such person is bound or willing to take up and pay for, the securities taken up shall be taken up as nearly as may be pro rata, disregarding fractions, according to the number of securities deposited by each depositor. The provisions of this subsection shall also apply to securities deposited within ten days after notice of an

increase in the consideration offered to security holders, as described in paragraph (7), is first published or sent or given to security holders.

15 U.S.C. § 78n(d)(6).

5. Plaintiffs' Brief p. 44. Although the Williams Act contains no explicit provision for a private cause of action, it is generally accepted that there is an implied right of action under § 14(e). *See Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 596 n. 20 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974). This cause of action is limited however, in accordance with the purposes of the legislation, to injured shareholders of target companies. *See Piper v. Chris-Craft Industries,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). We accept the assumption that, for the purposes of this case and under the facts presented, plaintiffs stood in the place of their customers for purposes of presenting a claim under § 14(e) (see Plaintiffs' Brief p. 14). In addition, while the claim under § 14(d)(6) appears to be one of first impression, we do not reach that issue inasmuch as we find that assuming a private action exists, plaintiffs have failed to establish their claim.

rities which plaintiffs attempted to tender were properly tendered and thus within the class of "deposited" securities entitled to pro rata treatment under the Act's oversubscription provisions.

 We agree with the district court that proper tender under the delayed delivery provisions meant not only delivery of properly executed Letters of Transmittal and delivery guarantees, but also the subsequent delivery of the actual certificates within eight days of Mobil's announcement that a specific number of shares would be purchased. This is clear from Paragraph 4 of the tender offer itself, which provided that "[p]ayment will be made *only against the deposit . . . of the certificates* no later than eight business days after public announcement . . . . (emphasis supplied). The public announcement was made on August 26, 1974. Since plaintiffs did not deposit the certificates by September 6, 1974, they did not fulfill this requirement of the tender offer and Mobil was not obligated to accept the late-tendered shares.[6] We, therefore, conclude that Mobil did not violate section 14(d)(6) by refusing to pay pro

rata for plaintiffs' improperly tendered shares.[7]

## III

Plaintiffs' second claim is that defendant violated section 14(e) of the Act, which is the antifraud provision and prohibits material omissions or false statements in connection with tender offers.[8] In particular, plaintiffs contend that this provision was violated in that defendant "gives no hint as to how it will make the public announcement that is to activate certificate delivery guarantees" (Plaintiffs' Brief pp. 43–44).

The problem with this claim is that Mobil's alleged failure to state how it will make the public announcement does not seem to involve any material omission or misstatement under the circumstances presented. The delayed delivery option was only open to financial professionals such as plaintiffs. It was their choice to retain the certificates rather than to present them to the depositary prior to expiration of the tender offer.[9] The issue then becomes whether the designation of the term "public announcement," without more explanation, omits information so as to prevent sophisti-

---

**6.** INB eventually delivered the certificates on September 18, 1974, but they were subsequently returned because of the late tender. Merchants also offered to deliver the certificates for stock covered by its delivery guarantee, but was instructed not to make delivery because the time had expired (Findings of Fact 15, 16).

**7.** To require Mobil to make payment for late-tendered shares would be completely at odds with the tender offer itself and there is no evidence the Congress intended to legislate what is a proper tender offer. Indeed, § 14(d)(6) was enacted merely to remove the pressures of first-come, first-purchased practices. *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 23, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). This problem is not involved in the present case.

**8.** *See* note 3, *supra,* for the text of § 14(e). The district court concluded that § 14(e), as the counterpart of § 10(b) of the Act and Rule 10b–5 of the Securities and Exchange Commission, should be read to require the same scienter requirement of Rule 10b–5. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Indeed, cases have held that the scienter requirements of the two sections are identical. *See Smallwood v.*

*Pearl Brewing Co.,* 489 F.2d 579, 606 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Applied Digital Data Systems, Inc. v. Milgo Electronic Corp.,* 425 F.Supp. 1145, 1157 (S.D.N.Y.1977); *Electronic Specialty Co. v. International Controls Corp.,* 295 F.Supp. 1063, 1077 (S.D.N.Y.1968), *aff'd in part, rev'd in part,* 409 F.2d 937 (2d Cir. 1969). While this conclusion appears reasonable, we need not determine whether the scienter requirements are the same in light of our disposition of the case. We do note, however, that no scienter has been shown in this case on the part of Mobil.

**9.** The delayed delivery option gives several advantages to someone choosing to tender in this manner. First, delayed delivery allows the tenderer to watch as the market price reflects purchases of the stock up to the very expiration of the offer. A shareholder is thereby able to buy or sell on the market at a price that is not depressed by the expected expiration of the offer. Second, this device allows shareholders located outside of major money centers and thus unable to deliver easily to a depositary bank to effect a timely tender with minimal difficulty.

cated investors from comprehending its meaning.

█ It is our conclusion, in accordance with the district court, that there was no omission involved in this case because the phrase "public announcement" has a generally accepted meaning in this field and involves the issuance, as here, of a press release. Put another way, the courts have equated a press release with a public announcement in the context of tender offers or related securities transactions. *See, e. g., Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 351 (2d Cir.) *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973); *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218, 221 (2d Cir. 1968), *cert. denied, sub nom., Manley v. Schoenbaum*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *SEC v. Shapiro*, 349 F.Supp. 46, 51 (S.D.N.Y.1972), *aff'd*, 494 F.2d 1301 (2d Cir. 1974); *Applied Digital Data Systems, Inc. v. Milgo Electronic Corp.*, 425 F.Supp. 1145, 1149–50, 1154–55 (S.D.N.Y.1977).

Further support for this conclusion is found in Reg. 240.14e–2, proposed by the Securities and Exchange Commission, which makes it a violation of section 14(e) for a tender offeror to extend the offer period unless the offeror issues "a press release or other public announcement" within one business day of the scheduled expiration of the offer. In addition, the New York Stock Exchange Company Manual provides at 22–24:

The normal method of publication of important corporate data is by means of a press release.

\* \* \* \* \* \*

To insure adequate coverage, releases requiring immediate publicity should be given to Dow Jones & Company, Inc., to Reuters Economic Services, and to Associated Press and United Press International.

The press release involved here was issued to these agencies and to major newspapers in New York, Indianapolis and throughout the country. Finally, the Indiana Business Takeover Act, Ind. Code § 23–2–3–2(b), requires that for a tender offer to become effective, the offeror must "publicly disclose by press release delivered to the leading wire services for the financial press the material terms of the proposed offer." Much broader distribution of the press release was given here by Mobil.

Plaintiffs are sophisticated parties that perform investment services for customers and receive compensation for these services. It was therefore reasonable for Mobil to use the phrase "public announcement" to describe the event which was to trigger delivery of the certificates. We therefore conclude that there was no material omission in violation of section 14(e).[10]

### IV

Plaintiffs' final claim is based on the tender offer itself. The contention is that Mobil "had an implied legal obligation to give . . . notice to the guaranteeing institutions" (Plaintiffs' Brief p. 21). Thus, accepting that the press release issued by Mobil constituted the "public announcement" required by the terms of the tender offer, the issue is whether Mobil nevertheless was required to give actual notice of the triggering event to plaintiffs.

█ We discussed in the previous section the procedure Mobil used in issuing its press release. The release was certainly sufficient under the terms of the offer and, within the parameters of the Williams Act amendments, an offeror has wide latitude over the terms of an offer. *See Kroeze v. Chloride Group Ltd.*, 572 F.2d 1099, 1105 (5th Cir. 1978); *Petersen v. Federated De-*

---

**10.** Indeed, it is questionable whether § 14(e) has any application to the *mechanics* of a tender offer. The district court held these mechanics did not affect an investment decision, but merely prescribed how to effectuate the investment decision once it had been made. Thus, § 14(e), which was designed to assure that informed investment decisions are made, would be substantially expanded if allowed to cover post-decision mechanics. This expansion is not warranted in the present case.

*velopment Co.,* 416 F.Supp. 466, 475 (S.D.N.Y.1976). A "public announcement" trigger simply differs from a "notice" trigger, and the former was what the tender offer required.[11] As stated by the district court at page 10 of its memorandum opinion:

> Whether or not individual notice or some other method would provide a better trigger is not the issue. The issue is whether a public announcement was an acceptable practice. Under the circumstances, this Court must conclude that the use of a public announcement to trigger delayed

11. This difference distinguishes *Bache & Co. v. International Controls Corp.,* 324 F.Supp. 998 (S.D.N.Y.1971), *aff'd,* 469 F.2d 696 (2d Cir. 1972) (per curiam). There *notice* was promised but not given. The offeror did not meet its agreement.

Plaintiff also relies on *Van Gemert v. Boeing Co.,* 520 F.2d 1373, 1383 (2d Cir.), *cert. denied,* 423 U.S. 947, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975), to support the conclusion that actual notice was required. The crux of that case, however, was the protection of unsophisticated investors. Plaintiffs here do not fall within that class.

12. The press release read:

MOBIL TENDER OFFER FOR MARCOR OVERSUBSCRIBED

Mobil Oil Corporation announced today that its offer to purchase shares of common stock and convertible cumulative preferred stock, Series A, of Marcor Inc. had been oversubscribed and will not be extended.

A preliminary count shows that as of 5:00 P.M. E.D.T. on Aug. 23, 1974, approximately 24.6 million shares of common stock and approximately 4.3 million shares of preferred stock had been tendered. The majority of these tenders is still in the process of review to confirm their compliance with technical requirements.

Subject to the terms and conditions of the offer, Mobil will purchase a total of 17,250,-000 shares, counting each share of common stock as one share and each share of preferred stock as two shares. Based on the preliminary count, approximately 52 percent of the tendered shares will be purchased on a pro-rata basis if the terms and conditions of the offer are met.

Institutions that have guaranteed delivery of certificates for shares must deliver all guaranteed shares to the depositary, Continental Illinois National Bank and Trust Company of Chicago, on or before Sept. 6, 1974. Certificates representing the balance of the tendered shares, including those guaranteed, will be returned as soon as practicable after Sept. 6, 1974.

deliveries is and was an acceptable practice.

We agree with this conclusion.

Plaintiffs argue further that, even if actual notice was not required, the publicity resulting from the press release was not adequate even though the press release itself did contain all the necessary information. We disagree. The press release was reproduced in its entirety on the Dow Jones broad tape on August 26, 1974.[12] The Wall Street Journal and Moody's Industrial Manual ran articles.[13] Some of the information

Mobil's purchase of shares pursuant to the offer remains conditional upon Marcor's disposing of its controlling interest in a bank prior to October 11, 1974. Mobil will, concurrently with the purchase of shares pursuant to the offer, purchase for $200,000,000 eight million shares of a new Series B voting preferred stock directly from Marcor. Marcor's management supported the offer and is cooperating in disposing of its interest in the bank and in completing Mobil's purchase of the new preferred stock.

13. The Wall Street Journal Article of August 27, 1974, read in part:

Mobil Oil Corp. said its cash tender offer to acquire control of Marcor Inc. has been oversubscribed and won't be extended.

As a result of the healthy premiums that Mobil offered for Marcor common and Series A convertible preferred stock, Marcor's shareholders tendered almost twice as many shares as Mobil needs to gain control of the Chicago-based retailing and paperboard packaging concern.

Mobil said about 24.6 million of Marcor's 29 million common shares outstanding and about 4.3 million of its six million Series A preferred shares were tendered. The common carries one vote a share and the preferred shares have two votes each, thereby giving Mobil 33.2 million votes. When it made its offer earlier this month, Mobil said it would purchase a total of 17,250,000 Marcor votes.

Thus, Mobil said yesterday it will take up about 52% of the tendered shares on a pro rata basis, paying $35 a share for the common and $70 a share for the preferred.

The Moody's Supplement of August 30, 1974, provided under the "Mobil Oil Corp." heading, in part:

Co. said its offer to purchase . . . has been over subscribed and will not be extended . . . . Co. will purchase 17,250,000 shs.

contained in the press release was published in Indianapolis newspapers. In addition, Mobil issued a second press release on September 5, 1974, carried by the Dow Jones broad tape the same day, which stated that Marcor stock certificates for which delivery had been guaranteed must be in by the close of business on September 6, 1974.

Plaintiffs had a contractual right to public announcement, not to individual notice.[14] The press release and the resulting publicity fulfilled Mobil's obligation. For reasons which are more particularly known by employees of INB and Merchants, plaintiffs failed to read or failed to comprehend the significance of the public announcement.[15] Mobil therefore did not breach its contract with plaintiffs and was not required by law to do more than was done here.

Therefore, for the reasons discussed above, the decision of the district court granting judgment for defendant Mobil is affirmed in all respects.

AFFIRMED.

14. It was clear to Mobil from the beginning that, since the tender offer price was substantially above the prevailing market rate, the offer would be oversubscribed. This fact, combined with pressure from the New York Stock Exchange and the Securities and Exchange Commission to effect speedy return of all unpurchased securities, makes the use of a public announcement a reasonable, if not necessary, method of triggering delivery.

15. It seems somewhat unusual that plaintiffs made no inquiry of Mobil or the depositary until after the delivery deadline had passed. This is particularly so not only because the tender offer had expired on August 23, 1974, but also since trading in Marcor did not open on the following business day, August 26. Moreover, when trading did open again on August 27, the price was reduced by almost one-third from the closing price on August 23. This sharp drop in price was certainly an indication to a sophisticated investor that a significant event had occurred.