570 So.2d 1016 (1990)
MID-STATE FEDERAL SAVINGS BANK, Etc., Appellant,
v.
MARKETING AND MANAGEMENT ASSOCIATES, INC., Appellee.
Nos. 89-1821, 89-2253.
District Court of Appeal of Florida, Fifth District.
October 25, 1990.
Rehearing Denied December 12, 1990.
Andrew G. Pattillo, Jr., John R. Dorough and Kelly G. Hamer of Pattillo & McKeever, P.A., Ocala, for appellant.
Harry A. Payton of Payton and Rachlin, P.A., Miami, and Young J. Simmons and Daniel A. Amat of Green and Simmons, P.A., Ocala, for appellee.
*1017 COBB, Judge.
The issue on appeal is whether or not an enforceable contract existed between Mid-State Federal Savings and Loan Association, as seller and lender, and a partnership, MMA, as buyer. MMA subsequently assigned its interest to Marketing and Management Associates, Inc., the corporate plaintiff below.
Mid-State owned a residential subdivision known as Ethan's Glen, which it had acquired through a foreclosure sale. MMA, consisting of corporations owned by Lloyd Boggio, Bob Bidwell (deceased), and Jeff Andrews, became interested in the property. During July and August, 1986, MMA and Mid-State negotiated for the sale and purchase of Ethan's Glen. During this period several drafts of a "Contract for Sale and Purchase" were exchanged between the two parties.
On September 8th, Mid-State prepared and signed the last version of the agreement, which was sent to MMA for its execution. The document was signed and witnessed without change by MMA and returned to Mid-State with a letter dated September 10th from Floyd Boggio, which stated as follows:
As you suggested, we are ignoring in this document the following issues:
1. Interest reserve[1] for the development loan;[2]
2. Interest reserve for the construction loan;[3] and,
3. Permanent financing for our buyers at 90% of the selling price and without a requirement to deliver some number of contracts before we are allowed to close an individual buyer (no pre-sale requirement).[4]
We are relying on your assurances that everyone at Mid-State is aware that all of these are essential to our development and marketing plans, and are a prerequisite for ultimately concluding this purchase.
On October 8th, MMA sent Mid-State its proposed Development Business Plan which set forth details regarding the deferred matters. Two weeks later, Mid-State advised MMA that "the deal was not going to work." MMA nevertheless insisted that the sale should close on its financing terms as of November 10, 1986, in response to which Mid-State notified MMA that it was "terminating the contract." The terms of the financing demanded by MMA were never agreed to by Mid-State.
It is a recognized principle of contract law that if the acceptance of an offer is to result in a contract, it must be absolute and unconditional, identical with the terms of the offer. See Bullock v. Harwick, 158 Fla. 834, 30 So.2d 539 (Fla. 1947); Sullivan v. Economic Research Properties, 455 So.2d 630 (Fla. 5th DCA 1984). *1018 When essential matters of a contract are left for further consideration, there is no meeting of the parties' minds and no enforceable contract. Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498 (Fla. 1927).
It is readily apparent that the "prerequisites" set forth in Boggio's letter  the interest reserves for the development and construction loans, permanent financing at 90 percent, and the elimination of any pre-sale requirement  related to substantial and material matters in regard to the financing of the proposed transaction. There was no unconditional acceptance of Mid-State's offer and no meeting of the parties' minds; hence, no express contract was created. Although the plaintiff below pled, in the alternative, that a contract existed by reason of promissory estoppel, there was insufficient evidence presented to sustain that theory and the jury verdict below was not based upon it.
Accordingly, the judgment entered below, together with the ancillary judgment for costs and attorney's fees in favor of the plaintiff, must be reversed.
REVERSED AND REMANDED FOR ENTRY OF JUDGMENT FOR THE DEFENDANT, MID-STATE FEDERAL SAVINGS AND LOAN ASSOCIATION.
GOSHORN and HARRIS, JJ., concur.
NOTES
[1] The concept of "interest reserves" on loans was explained by Boggio as when the lender virtually loans money to pay the interest on his loan, a way of deferring the interest payment by borrowing from the lender. These interest reserves had been a subject of discussion at every meeting of the parties.
[2] Version 1, prepared by MMA, contained "a future advance provision equal to 24 months interest at 10%, to be used as an interest reserve" on the development loan. Mid-State deleted this from the second version. It was reinstated by MMA in the third version, "including a sum sufficient to provide an interest reserve equal to 10% of the loan proceeds." In the final agreement which Mid-State prepared, all references to interest reserves on the development loan were deleted.
[3] Version 1 also contained "a future advance provision of up to $60,000.00 to be used as an interest reserve" on the construction loan. Mid-State deleted this from Version 2. In Version 3, MMA reinstated a provision for the interest reserve, this time in an amount equal to 7 1/2% of the construction loan ($22,500). In the final agreement, there was no reference to an interest reserve for the construction loan.
[4] MMA proposed an assurance of permanent loans to buyers at 90% of sales price. The requirement for this financing had been included in the first and third versions prepared by MMA, but Mid-State deleted it from Versions 2 and 4. In the final agreement, Mid-State was to provide "purchase money financing to qualified and approved purchasers of individual residential units in Ethan's Glen in such amount and upon such terms as are generally made available by seller to borrowers at the time each application for such financing is made."